■ In the Matter of FRANK PRUDENCE, Respondent, v TOWN OF ITHACA ZONING BOARD OF APPEALS, Appellant. [599 NYS2d 749] —Yesawich Jr., J. P. Appeal from a judgment of the Supreme Court (Relihan, Jr., J.), entered June 18, 1992 in Tompkins County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent finding that petitioner had abandoned the use of his property as a commercial business facility.

Petitioner's property in the Town of Ithaca, Tompkins County, consisting of a residence and a large, commercial-type building (hereinafter the building), has been zoned residentially since the adoption of the Town's zoning ordinance in 1954. The property was the site of the "Flowerfield Florists", a nursery, florist shop and lawn and garden equipment retailer, from some time in the 1940s until about 1968;[1] it was vacant between 1968 and 1970, and from 1970 until 1979 it was made use of by several different enterprises in sequence, including a vending machine concern, an egg processing facility, an antique shop and a bus garage. Petitioner purchased the property in 1979 and used it as the primary location of his food distribution business, F & T Distributing Company, until 1988. In September 1981, petitioner, who believed that the commercial use to which he put the building, referred to in various zoning applications as an "existing warehouse", constituted a "legal non-conforming use", sought and was granted a variance to build an addition to the structure.[2] Beginning in 1988,

---

1. At the time the ordinance was passed, there were apparently three greenhouses on the property, the largest of which served as the "main building" of the florist business. The Tiltons, who owned the property during this period, were issued a building permit in 1955 to erect a single additional greenhouse, and another in 1964 for the construction of the building, which replaced the greenhouses and which was referred to as "store and storage".

2. Petitioner went before the Town's Zoning Board on two other occa-

when F & T acquired a larger facility elsewhere, petitioner began to lease a portion of the building to other businesses for storage; he continued to use the remainder for auxiliary storage in connection with F & T.

In 1991, in anticipation of selling the property, petitioner sought an opinion from the Town's zoning enforcement officer regarding potential uses to which a purchaser could put the commercial building without running afoul of the zoning laws. The officer informed him that a food distribution business such as F & T is permitted within a "Business C" zone, but that storage of the type for which the property was being used at that time is only permitted in an "industrial" zone. Because the use of the building had been changed from a "Business C" use to an "industrial" use, petitioner was notified that his property was in violation of the zoning ordinance and that he must either discontinue using the building or seek a variance.

Petitioner appealed this determination to respondent which, after a public hearing, concluded (1) that petitioner had obtained no rights as a result of respondent's previous actions, in which it was apparently assumed that the commercial use of the property was legal as a prior, nonconforming use, and (2) that petitioner had "abandoned or discontinued" the nonconforming use. This CPLR article 78 proceeding challenging respondent's decision followed. Supreme Court, reversing and annulling that decision, found it to be arbitrary and without substantial basis in the record. Respondent appeals.

We affirm. Respondent's determination of abandonment is unjustified. It appears from the record that the property was already the site of a commercial enterprise, a nursery and florist shop, when the zoning ordinance was first enacted. Respondent argues that the business, advertised as "Flowerfield Florists", was no more than a "nursery", which is a permitted accessory use in a residentially zoned district. A nursery, however, is defined as "a place where young trees or other plants are raised * * * for sale" (Random House Dictionary of the English Language 1332 [unabridged 2d ed 1987]); a "florist", on the other hand, was specifically listed in the zoning ordinance as an example of the type of enterprise permitted in a business district at that time (Zoning Ordinance of the Town of Ithaca, art IV, § 11 [eff Oct. 7, 1954]).

sions as well. In 1978, prior to purchasing the property, he was granted a variance to erect a sign on the premises, and in October 1981 he obtained a modification of the variance granted the preceding month. At no time was the legality of his use of the property questioned.

Furthermore, the record also contains uncontradicted evidence that this establishment served as a retail outlet for "lawn and garden equipment", an activity which is clearly beyond the scope of those "nursery" operations considered incidental to normal residential use.

A nonconforming use having been in existence at the time the ordinance became effective, that use is allowed to continue until it is abandoned (see, Zoning Ordinance of the Town of Ithaca, art VII, §§ 19, 20 [eff Oct. 7, 1954]; *Town of Ithaca v Hull,* 174 AD2d 911, 913). Moreover, another use may be substituted provided that the new use is one which would have been permitted in the most restrictively zoned district in which the original use was allowed. As for "abandonment", that cannot be found to have occurred unless there is evidence of an intent to abandon; mere discontinuance of the nonconforming use is insufficient (see, *Matter of Marzella v Munroe,* 123 AD2d 866, *mod on other grounds* 69 NY2d 967). Abandonment requires "a voluntary, affirmative, completed act" *(City of Binghamton v Gartell,* 275 App Div 457, 460).

Here, there was no evidence before respondent that the vacancy of the subject property during the late 1960s was accompanied by any intent to abandon its use as a commercial facility; thus, that period cannot be the basis for a finding of abandonment. Also noteworthy is the fact that respondent specifically found that *"the applicant * * * has discontinued and abandoned the use of the property as a commercial business facility for a period in excess of one year"* (emphasis supplied); thus, respondent appears to have rested its decision on the shift in usage occasioned in 1988, when petitioner moved the primary location of his business and began using the subject property only for storage. This comports with the zoning enforcement officer's finding that storage constituted an impermissible "industrial" use, and his implication that by utilizing the property in this way petitioner lost his right to any previously existing nonconforming use. However, the mere addition of an unpermitted use on a site previously used for a legal, nonconforming use, without complete cessation of the former use, does not effect an abandonment (see, *Town of Ithaca v Hull,* 174 AD2d 911, 913, *supra).* Although petitioner moved the primary location of his business elsewhere in 1988, the record discloses that he continued using at least a portion of the subject property for activities that were similar in nature, if somewhat diminished in volume or intensity, to those he engaged in at that location for approximately nine years. Under these circumstances, petitioner's undertaking to

rent part of the building to unrelated entities does not establish an intent to abandon the former use.

Levine, Mercure, Mahoney and Harvey, JJ., concur. Ordered that the judgment is affirmed, with costs.