[821 NYS2d 81]

In the Matter of DURANTE BROS. CONSTRUCTION CORP., Respondent, v ST. JOHN'S CEMETERY, Also Known as SAINT JOHN'S CEMETERY, Appellant.

Second Department, July 25, 2006

APPEARANCES OF COUNSEL

*Wingate, Kearney & Cullen,* Brooklyn (*Richard J. Cea* and *Marc J. Monte* of counsel), for appellant.

*Vincent A. DeIorio,* Purchase (*Howard B. Cohen* of counsel), for respondent.

## OPINION OF THE COURT

RIVERA, J.

On this appeal, arising from a proceeding pursuant to CPLR article 52 to enforce a money judgment, the primary issue presented is what portions of the subject cemetery real property and improvements are exempt from execution and sale pursuant to Real Property Law § 450. In this opinion, we define what is encompassed in the category of exempt property and what may properly be executed upon and sold in satisfaction or partial satisfaction of a money judgment. However, since the record has not been fully developed, we reverse the order appealed from and remit the matter to the Supreme Court, Queens County, for further proceedings in accordance herewith.

## I. Factual Background

The petitioner Durante Bros. Construction Corp. (hereinafter Durante) performed certain construction work pursuant to an oral agreement with the Roman Catholic Diocese of Brooklyn, as agent for St. John's Cemetery, also known as Saint John's Cemetery (hereinafter St. John's). Upon nonpayment for such services, Durante commenced an action alleging that there was due and owing more than $500,000 for such services. On a prior appeal, this Court determined that Durante was entitled to summary judgment (*see Durante Bros. Constr. Corp. v St. John's Cemetery,* 285 AD2d 578 [2001]). Thereafter, Durante obtained a money judgment against St. John's. Upon the issuance of an execution, and after a New York City marshal levied on the subject real property owned by St. John's, Durante commenced the instant special proceeding. Durante then moved, inter alia, to direct the Sheriff of the City of New York or a New York City marshal to sell, at a public auction, certain portions of the real property, along with buildings and other improvements, and thereafter to remit the proceeds of the sale to Durante in satisfaction of the judgment. The Supreme Court granted the motion, and directed the sale of "any and all real property" belong-

ing to St. John's that did not contain graves or burial monuments, including, among others, two office buildings, parking lots, a machine shop, and a garage located on the cemetery grounds, in satisfaction of the money judgment.

## II. Legal Analysis

### A. "Cemetery Purposes"

Real Property Law § 450 (1) provides, in relevant part, that "[n]o land actually used and occupied for cemetery purposes shall be sold under execution or for any tax or assessment, nor shall such tax or assessment be levied, collected or imposed, nor shall it be lawful to mortgage such land, or to apply it in payment of debts, so long as it shall continue to be used for such cemetery purposes, except cemetery lands in which interments have not been made may be sold under execution to satisfy a valid judgment of a court of record." The purpose of this statute is to prevent the desecration of burial places (*see Matter of Chauncey*, 106 Misc 534 [1919], *revd on other grounds* 191 App Div 359 [1920]).

In determining what land is exempt from execution and sale under Real Property Law § 450, the court must first ascertain if the subject land is "actually used and occupied" for "cemetery purposes." Whether particular land is "actually used" for "cemetery purposes" within the meaning of Real Property Law § 450 (1) has been found to be a question of fact (*see People ex rel. Buffalo Burial Park Assn. v Stilwell*, 190 NY 284, 291 [1907]; *Salesian Socy. v Nutmeg Partners*, 256 AD2d 455 [1998]; 18 NY Jur 2d, Cemeteries and Dead Bodies § 32; *cf. Matter of City of New York*, 260 App Div 659, 662-663 [1940]).

Significantly, the term "cemetery purposes" is not defined in the statute. Whereas, prior decisional case law has been somewhat elucidative in defining "cemetery purposes," there is no comprehensive didactic opinion on this subject. Accordingly, we set forth herein the definitional parameters of "cemetery purposes."

Land used for "cemetery purposes" encompasses land used for burials, as well as land held "in reserve" for future burials even though no body has yet been interred therein (*see People ex rel. Buffalo Burial Park Assn. v Stilwell, supra* at 290-291; *Pinelawn Cemetery v Cesare*, 64 AD2d 607, 608 [1978]). Moreover, land used as a yard for storage of tools, machinery, and equipment is also actually used and occupied for "cemetery

purposes'' since the use of such yard is ''necessary and incidental to the proper maintenance of the cemetery and for carrying out the purposes for which it was organized'' (*People ex rel. Woodlawn Cemetery v Chambers*, 91 NYS2d 774, 777 [1949]). On the other hand, the Court of Appeals has determined that land held by a cemetery corporation ''for the purposes of the convenient transaction of its general business, no portion of which shall be used for the purposes of a cemetery,'' is not exempt (*see Springfield, L.I., Cemetery Socy. v City of New York*, 271 NY 66, 70 [1936]).

Guided by the principle that ''the operation of a cemetery is impressed with a public purpose'' (*Diamant v Mount Pleasant Westchester Cemetery Corp.*, 10 AD2d 404, 410 [1960]), to perform the essential and worthy task of maintaining the burial of the dead, land actually used to ensure the functioning and survivability of the cemetery must also be included under the category of ''cemetery purposes.'' By logical necessity and implication, that land must be protected, that is, exempted from sale and execution. Otherwise, the cemetery cannot perform its important purpose. It will simply wither and die.

### B. ''Land in Which Interments Have Not Been Made''

Durante argues that St. John's main gate, plaza, service garages, parking lots, administrative buildings, and machine shop, in which interments have not been made, may be sold under execution to satisfy a valid judgment. To support this claim, Durante relies on the second phrase contained in Real Property Law § 450 (1), which provides that ''except cemetery lands in which interments have not been made may be sold under execution to satisfy a valid judgment of a court of record.'' In effect, Durante ignores the significance of the first phrase of the statute which, as discussed above, states that ''[n]o land actually used and occupied for cemetery purposes shall be sold under execution.''

Durante's narrow interpretation of the statute is contrary to well-established principles of statutory construction. ''It is a fundamental rule of statutory construction that a statute or legislative act is to be construed as a whole, and that all parts of an act are to be read and construed together to determine the legislative intent'' (McKinney's Cons Laws of NY, Book 1, Statutes § 97; *Golden v Koch*, 49 NY2d 690, 694 [1980]). There is no indication that the Legislature intended to obviate or repeal the portion of Real Property Law § 450 prohibiting, inter

alia, the sale under execution of "land actually used and occupied for cemetery purposes" when it stated that "cemetery lands in which interments have not been made may be sold under execution to satisfy a valid judgment of a court of record" (Real Property Law § 450 [1]). On the contrary, simply stated, the second phrase allows for the sale of land in which interments have not been made, provided that said land is not otherwise used for "cemetery purposes" as defined herein.

## III. Conclusion

The record reveals that certain unimproved tracts of land within the cemetery have not been used for interments. However, further fact-finding is needed to establish the identity, size, and location of those tracts, as well as whether they constitute land used for "cemetery purposes" as we have defined it. Additionally, the same determination must be made with regard to the two office buildings, parking lots, machine shop, and garage identified by the Supreme Court. Are they necessary to ensure the functioning and survivability of the cemetery? While we recognize that Durante is entitled to just compensation for work and services performed, St. John's is entitled to the protections afforded by Real Property Law § 450.

The Supreme Court is hereby directed to conduct an evidentiary hearing for the purpose of ascertaining what land may properly be deemed to be included under the category of used for "cemetery purposes," as defined herein. The matter is remitted to the Supreme Court, Queens County, for a hearing to identify and determine what specific land, if any, may properly be sold, consistent with the instant opinion. Upon the determination thereof, the Supreme Court shall enter an appropriate order directing the sale of any such land.

Durante's remaining contentions are without merit.

Accordingly, the order is reversed, on the law, and the matter remitted to the Supreme Court, Queens County, for a hearing consistent herewith and for a new determination of the motion thereafter.

FLORIO, J.P., KRAUSMAN and FISHER, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and the matter is remitted to the Supreme Court, Queens County, for a hearing consistent herewith and for a new determination of the motion thereafter.