224

[903 NYS2d 60]

In the Matter of Enforcement of Tax Liens by COUNTY OF ORANGE, Appellant-Respondent. AL TURI LANDFILL, INC., Respondent-Appellant.

Second Department, May 25, 2010

## APPEARANCES OF COUNSEL

*David L. Darwin, County Attorney*, Goshen (*Matthew J. Nothnagle* of counsel), for appellant-respondent.

*McCullough, Goldberger & Staudt, LLP*, White Plains (*Robert J. Hecker* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

ANGIOLILLO, J.

In this appeal and cross appeal we are asked to determine whether the County of Orange timely petitioned for leave to institute a supplementary proceeding pursuant to Real Property Tax Law §§ 990 and 1138 (5) for the collection of delinquent taxes after having discontinued foreclosure proceedings on the ground that acquisition of the subject property, a landfill, could subject the County to a significant risk of liability substantially in excess of any recoverable, unpaid taxes. We are further asked to determine whether, in light of the valuation issue suggested by the County's discontinuance of the foreclosure proceedings, this proceeding should have been transferred to be consolidated or joined with a separate, ongoing tax certiorari proceeding pursuant to article 7 of the Real Property Tax Law brought by the landowner to challenge the assessed value. We conclude that the County properly withdrew the subject property from the foreclosure proceedings and timely filed its petition for leave to institute the supplementary proceeding, which may be litigated independently of the tax certiorari proceeding.

The Tax Liens and Foreclosure Proceedings

Al Turi Landfill, Inc. (hereinafter the landowner) is a domestic corporation which owns four parcels of real property located in the Town of Goshen, Orange County, designated on the tax map as Lots 17.1, 17.2, 21.1, and 23.1 of Section 12, Block 1 (hereinafter the subject property). In January of each of the years 2004, 2005, and 2006, the Town of Goshen issued tax bills for the subject property which, by operation of law, became liens against the property (*see* RPTL 902). The landowner concedes that it has not paid these bills, which amount to a total unpaid sum of $3,008,733.31 for the subject property.

Joel Kleiman, the Commissioner of Finance for the County, is the designated "enforcing officer" for the collection of taxes (*see* RPTL 1102 [3]), and Maryanne Hesse is the Real Property Tax Supervisor for the County. The responsibilities of these County officials include the collection of real property taxes which remain unpaid after the expiration of the Town collection period of January 1 through March 31 of each year. The County's usual practice is to send an initial notice to the taxpayer in April, followed by a notice in September if the account remains

unpaid. Thereafter, as was done in this case, a "list of delinquent taxes" is filed with the County Clerk. In November 2004 and November 2005, for the 2004 and 2005 tax liens, respectively, Kleiman filed such lists with the Orange County Clerk, which included the tax map designation of the lots within the subject property, identified the landowner as record title holder, and stated the amount due for each lot. These filings were the first step in the commencement of proceedings to foreclose the 2004 and 2005 tax liens, and had the same force and effect as a notice of pendency pursuant to article 65 of the CPLR (see RPTL 1120, 1122 [7]). The County subsequently served foreclosure petitions on the landowner, who failed to answer or respond.

According to the 2006 tax roll, the assessed value of the subject property is approximately $18 million. In January 2006 Director John McCarey and Assistant Director Eric Ruscher of the Real Property Tax Service Agency for the County inspected the subject property and determined that it was a landfill where garbage had been dumped. McCarey and Ruscher did not conduct a formal market analysis or appraisal but determined, based upon their visual inspection alone, that the subject property was undesirable because environmental issues could expose the County to liability if it acquired the property. They did not quantify the extent of the potential risk to the County or the cost of remediation. On a worksheet, McCarey made the notation "$1" next to each of the landowner's lots and wrote the recommendation, "withdraw from list." In a subsequent meeting with Kleiman and Hesse, McCarey and Ruscher recommended that the subject property be withdrawn from the tax lien foreclosure proceedings.

On January 30, 2006 Kleiman executed and caused to be filed with the Orange County Clerk two certificates of withdrawal in the foreclosure proceedings related to the 2004 and 2005 tax liens. Each certificate, after identifying the lots comprising the subject property, contained the following preprinted language: "Pursuant to section 1138 of the Real Property Tax Law, I hereby withdraw the parcel from foreclosure for the following reason". On a list of preprinted reasons, Kleiman made a check mark next to the following: "If the tax district were to acquire the parcel, there is a significant risk that it might be exposed to a liability substantially in excess of the amount that could be recovered by enforcing the tax lien." In addition, on each certificate Kleiman wrote the word "landfill" after preprinted

language asking for the "specific facts which render the parcel eligible for withdrawal."

## The County's Petition for Leave to Institute a Supplementary Proceeding

### The Verified Petition and Answer

By petition filed on or about October 25, 2006, the County petitioned the Supreme Court pursuant to Real Property Tax Law §§ 990 and 1138 (5) for leave to institute a supplementary proceeding for the collection of $3,008,733.31 in unpaid taxes, interest, and penalties for the tax years 2004, 2005, and 2006 with respect to the subject property. The County appended evidentiary support for the amount due, the landowner's nonpayment, the institution of tax foreclosure proceedings, and the reason for withdrawing the subject property from foreclosure.

The landowner served an answer in which it admitted ownership and actual possession of the subject property, failure to pay the taxes due, and the County's filing of the two certificates of withdrawal in the foreclosure proceedings. By way of affirmative defense, the landowner asserted that the County's claims were time-barred and precluded by the doctrines of laches, estoppel, and waiver. The landowner further asserted the affirmative defense of unjust enrichment, alleging that the unpaid taxes were based upon an inflated assessment of the value of the subject property, which the landowner is currently challenging in a separate tax certiorari proceeding pursuant to article 7 of the Real Property Tax Law, pending in the same court (LaCava, J.) under index No. 7195/08 (hereinafter the tax certiorari proceeding). The landowner alleged that the County's withdrawal of the subject property from the foreclosure proceedings negated its assessed value on the tax roll and was tantamount to an admission that the subject property was without value.

### The County's Motion for Summary Judgment

By notice of motion dated April 30, 2008, the County moved for summary judgment on the petition and dismissing the landowner's affirmative defenses. In support of its motion, the County submitted, among other things, its petition, with the supporting affidavit of Kleiman and attached exhibits, as well as the deposition testimony of Kleiman, McCarey, and Ruscher concerning the inspection of the subject property and the basis for withdrawing it from the foreclosure proceedings. The County

contended that its petition was timely filed pursuant to Real Property Tax Law § 1138 (5) (hereinafter section 1138 [5]), which allows the commencement of a supplementary proceeding within one year of filing a certificate of withdrawal from a foreclosure proceeding. The County further argued that the defenses of laches, estoppel, and waiver were without merit, and that the alleged improper assessment of the subject property was not a defense to payment of the taxes or a ground for staying the County's enforcement proceedings. The landowner was required to challenge the assessment in the separate tax certiorari proceeding, which is the exclusive procedure for review of real property assessments, while the County pursued this supplementary proceeding independently.

## The Landowner's Opposition and Cross Motion

The landowner cross-moved for summary judgment dismissing the proceeding, or in the alternative, in effect, to transfer the proceeding to be consolidated or joined with the tax certiorari proceeding. The landowner submitted, among other things, Hesse's deposition testimony that the Town "returned" unpaid tax bills to the County for collection on March 31 of each year, and argued that the County's petition was time-barred pursuant to Real Property Tax Law § 990 (1) (hereinafter section 990 [1]), which requires commencement of the supplementary proceeding within one year after a tax "is returned by the proper collecting officer uncollected." The landowner reasoned that the latest date to commence a supplementary proceeding is March 31 of the year following return of the warrant from the Town and, thus, the County's commencement of this proceeding on October 25, 2006, was time-barred as to the 2004 and 2005 tax liens.

The landowner further contended that the County's reliance upon the limitations period in section 1138 (5) was unavailing because the County had failed to submit any evidence in support of its reason for withdrawing the subject property from the foreclosure proceeding. Although the landowner conceded that the subject property was a landfill, it contended that the County had the burden of stating the ultimate facts and circumstances which constitute the alleged liability it would incur upon acquiring the property as well as affirmative proof that the liability would exceed the value of the property acquired by enforcing the tax lien through foreclosure.

## The Supreme Court's Order

By order dated September 5, 2008, the Supreme Court denied the County's motion for summary judgment on the petition and dismissing the landowner's affirmative defenses and, in effect, denied that branch of the landowner's cross motion which was for summary judgment dismissing the proceeding. The Supreme Court noted that the landowner had raised several affirmative defenses, including challenges to the property assessment for tax purposes and the County's underlying reasons for withdrawing the subject parcels in order to commence the instant supplementary proceeding. Noting the landowner's alternative request, in effect, that the proceeding be transferred to be consolidated or joined with the pending tax certiorari proceeding before Justice LaCava, the court granted that relief in light of the "common issues of law and fact" between the two matters.

The County appeals from so much of the Supreme Court's order as denied its motion and granted that branch of the landowner's cross motion which was, in effect, to transfer this proceeding, and the landowner cross-appeals from so much of the order as, in effect, denied that branch of its cross motion which was for summary judgment dismissing the proceeding. On the appeal and cross appeal, the parties assert the same contentions they advanced in support of the motion and cross motion before the Supreme Court.

## Overview of Real Property Tax Collection

Under the statutory scheme for the collection of real property taxes, "[t]owns and counties work hand in hand in maintaining tax records" (*Kennedy v Mossafa*, 100 NY2d 1, 6 [2003]). Each town assessor annually completes the assessment roll for town properties and delivers it to the county legislative body by July 1 (*see* RPTL 500 [1]; 502, 516 [1]). By December 31 of each year, the county levies the taxes by entering the amount of tax to be paid for each parcel on the assessment roll of each town (*see* RPTL 900 [1]). The amount of tax levied by the county upon any parcel of real property "shall . . . become a lien thereon as of the first day of January of the fiscal year for which levied and shall remain a lien until paid" (RPTL 902). A collection warrant is filed with the assessment roll, directing the town collecting officer to collect the taxes no later than April 1 (*see* RPTL 904 [1]).

Upon receipt of the tax roll and warrant, the town collecting officer is obligated to take certain measures prescribed by law

to collect the taxes during the warrant period (*see e.g.* RPTL 920 [1]; 922 [1] [a]; 987 [1]). Any resident owner of real property, including a corporation having a place of business within the town or in actual possession of the subject property, is personally liable for the taxes levied thereon (*see* RPTL 926 [1]; *Matter of Foreclosure of Tax Liens [County of Orange—Viewpoint Realty Corp.]*, 17 AD3d 363, 365 [2005]), and the warrant authorizes the collecting officer to levy upon personal property belonging to such resident owners (*see* RPTL 904 [4]; 926 [2]). Upon the expiration of the warrant, the collecting officer of each town delivers an account to the county treasurer of all taxes which remain unpaid (*see* RPTL 936 [1]). The "enforcing officer" for the county (RPTL 1102 [3]) then has the duty "to enforce annually all tax liens," but any failure to enforce a tax lien "shall not impair the lien or prevent a sale or stay any other proceedings for its enforcement after the time specified" (RPTL 1160 [1]).

One of the authorized methods of collecting delinquent taxes is by foreclosing on a tax lien in a proceeding in rem (*see* RPTL 1120; *Kennedy v Mossafa*, 100 NY2d at 7 n 1). Ten months after the lien date, or as soon thereafter as practicable, the enforcing officer executes and files with the county clerk a "list of delinquent taxes" (RPTL 1122 [1], [5]). While, under previous law, a foreclosure proceeding was commenced by filing the list of delinquent taxes, currently, the filing and indexing of the list serves the purpose of a notice of pendency pursuant to CPLR article 65, and the foreclosure proceeding is commenced by filing a petition of foreclosure (*see* RPTL 1123 [1]; 1122 [8]; *Matter of City of Troy v Greenberg*, 251 AD2d 926, 927 [1998]; *Youngs v Bradley*, 237 AD2d 700, 701 [1997]). In a foreclosure proceeding, the tax lien is "presumed to be valid" (RPTL 1134).

At any time prior to final judgment, the enforcing officer may withdraw a parcel from the foreclosure proceeding for one or more reasons provided by statute, including: "if the tax district were to acquire the parcel, there is a significant risk that it might be exposed to a liability substantially in excess of the amount that could be recovered by enforcing the tax lien" (RPTL 1138 [1] [d]). The procedure for withdrawal requires simply that the enforcing officer "issue a certificate of withdrawal, setting forth the facts which render the parcel eligible for withdrawal from foreclosure" and file the certificate with the county clerk (RPTL 1138 [2] [a], [b]). The filing of the certificate has the effect of withdrawing the parcel from foreclo-

sure but has no effect upon the tax liens against the parcel nor upon its inclusion in the list of delinquent taxes which serves as a notice of pendency (*see* RPTL 1138 [3] [a]). The enforcing officer must reinstate the foreclosure proceeding if, inter alia, "the parcel is no longer eligible for withdrawal from foreclosure" (RPTL 1138 [4] [a]).

Barring reinstatement, "[o]nce a foreclosure proceeding has been withdrawn, RPTL 1138 (5) requires the enforcing officer to commence a 'supplementary proceeding' to collect the delinquent taxes in the manner provided by RPTL 990 if, inter alia, the officer determines that 'doing so would be an effective means to enforce collection of the delinquent tax' " (*Matter of Foreclosure of Tax Liens [County of Orange—Viewpoint Realty Corp.]*, 17 AD3d at 364, quoting RPTL 1138 [5]). A supplementary proceeding "may be commenced within one year from the issuance of a certificate of withdrawal, notwithstanding the fact that the enforcing officer may have previously proceeded [by foreclosure] pursuant to the provisions of [RPTL art 11]" (RPTL 1138 [5]).

Without reference to the foreclosure provisions of article 11, article 9 of the Real Property Tax Law contains a one-year limitations period for the commencement of a supplementary proceeding which is triggered by the return of uncollected taxes:

> "If a tax exceeding ten dollars is returned by the proper collecting officer uncollected, the enforcing officer may within one year thereafter, or at such time as may otherwise be prescribed by law, apply to the court for the institution of proceedings supplementary to execution, as upon a judgment docketed in such county, for the purpose of collecting such tax and fees with interest and other charges thereon" (RPTL 990 [1]).

The statutory language defines the proceeding as "supplementary to execution, as upon a judgment docketed," thus rendering it in the nature of those devices included in CPLR article 52 for the enforcement of a money judgment (*see Matter of Maltbie v Lobsitz Mills Co.*, 223 NY 227, 232 [1918] [interpreting Tax Law former § 299]; *Matter of Widmark v Cahill*, 269 AD2d 33, 35-36 [2000]). Such enforcement devices, in the context of civil actions, are often referred to as "supplementary proceedings" (*see generally Matter of Balanoff v Niosi*, 16 AD3d 53, 59 [2005]; *Rozzo v Rozzo*, 274 AD2d 53, 55 [2000]; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR

C5222:1; Siegel, NY Prac § 492, at 836 [4th ed]). Section 990 (1) thus, in effect, converts a tax lien into the equivalent of a money judgment for enforcement purposes. "The tax . . . takes the place of the judgment" and the "proceeding is in all respects 'as upon a judgment docketed in such county for the purpose of collecting such tax' " (*Matter of Maltbie*, 223 NY at 232, quoting Tax Law former § 299).

### The Limitations Periods in Sections 990 (1) and 1138 (5)

The landowner contends that, to the extent the County seeks to recover amounts due under the 2004 and 2005 tax liens, this article 9 proceeding is time-barred pursuant to section 990 (1) because it was commenced more than one year after those taxes were "returned by the proper collecting officer uncollected." The County, on the other hand, relies upon section 1138 (5) for its contention that this supplementary proceeding was timely commenced "within one year from the issuance of a certificate of withdrawal, notwithstanding the fact that the enforcing officer . . . previously proceeded pursuant to the provisions of [article 11]" in commencing a foreclosure proceeding.

To resolve this issue, we rely upon familiar principles of statutory construction. "Statutes which relate to the same subject matter must be construed together unless a contrary legislative intent is expressed" (*Matter of Dutchess County Dept. of Social Servs. v Day*, 96 NY2d 149, 153 [2001]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 221). The courts must "harmonize the various provisions of related statutes and . . . construe them in a way that renders them internally compatible" (*Matter of Aaron J.*, 80 NY2d 402, 407 [1992]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 97, 98; *Matter of Durante Bros. Constr. Corp. v St. John's Cemetery*, 33 AD3d 5, 8 [2006]). In the case of a conflict between a general statute and a special statute governing the same subject matter, the general statute must yield (*see Matter of Brusco v Braun*, 84 NY2d 674, 681 [1994]; *L. K. Land Corp. v Gordon*, 1 NY2d 465, 470 [1956], *cert denied sub nom. Greenfield v L.K. Land Corp.*, 352 US 989 [1957]; *People v Avilas, Inc.*, 29 AD3d 764, 765 [2006]; McKinney's Cons Laws of NY, Book 1, Statutes § 397). Finally, "[a] construction rendering statutory language superfluous is to be avoided" (*Matter of Branford House v Michetti*, 81 NY2d 681, 688 [1993]).

■ Applying these principles here, the general limitations provision set forth in article 9 must yield to the specific provi-

sion in article 11. Section 990 (1) grants the enforcing officer general authority to institute a supplementary proceeding within one year of the return of the tax uncollected. Section 1138 (5) applies to the narrower circumstance in which the enforcing officer has timely commenced a foreclosure proceeding pursuant to article 11 and subsequently issues a certificate of withdrawal. In such case, as indicated by the word "shall," the enforcing officer is required to commence a supplementary proceeding after issuing the certificate of withdrawal if "he or she determines that doing so would be an effective means to enforce collection of the delinquent tax" (RPTL 1138 [5] [a]).

Reading sections 990 (1) and 1138 (5) together so as to give effect to both, section 990 (1) governs all situations in which a foreclosure proceeding has not been discontinued, and section 1138 (5) governs a case such as this where the enforcing officer has commenced and subsequently withdrawn from a foreclosure proceeding. The landowner's suggestion that section 990 (1) should apply to the circumstances in this case effectively renders the mandate of section 1138 (5) impossible of accomplishment since the County cannot commence a foreclosure proceeding and issue a certificate of withdrawal by the time the town collection officer returns the tax uncollected, which is the starting point for the limitations period of section 990 (1). The landowner's interpretation of the statutory scheme, thus, renders section 1138 (5) nugatory, a result that should be avoided (*see Matter of Branford House v Michetti*, 81 NY2d at 688).

Accordingly, section 1138 (5) applies here. The enforcing officer issued the two certificates withdrawing the subject property from foreclosure proceedings for the 2004 and 2005 liens on January 30, 2006. The County's petition for leave to institute a supplementary proceeding is dated October 25, 2006. Since the petition was filed within a year after the certificates of withdrawal were issued, this supplementary proceeding was timely commenced within the limitations period set forth in section 1138 (5).

Propriety of the County's Withdrawal from Foreclosure Proceedings

The landowner further contends that the County may not rely upon section 1138 (5) because the enforcing officer improperly issued the certificates of withdrawal without providing evidentiary support quantifying the County's potential exposure to liability should it acquire the subject property by foreclosure. This contention finds no support in the law.

In order to withdraw a parcel from a foreclosure proceeding, the enforcing officer must issue and file "a certificate of withdrawal, setting forth the facts which render the parcel eligible for withdrawal from foreclosure" (RPTL 1138 [2] [a]; [3]). Here, the enforcing officer complied with this procedure by filing certificates which stated that the property was a "landfill," and that, if the County were to acquire the parcel, "there is a significant risk that it might be exposed to a liability substantially in excess of the amount that could be recovered by enforcing the tax lien." The reason given was one provided for by law (*see* RPTL 1138 [1] [d]). Nothing in the statute requires the submission of evidence in support of the enforcing officer's determination.

Indeed, the landowner's contention that something more is required is inconsistent with other enforcement provisions. For example, the enforcing officer is required to reinstate a withdrawn proceeding if "he or she determines that the parcel is no longer eligible for withdrawal from foreclosure" (RPTL 1138 [4] [a]). In this context, "[t]he statute does not require any proof of the reason for reinstatement other than the filing of 'a certificate of reinstatement setting forth the reasons for the reinstatement of the proceeding' " (*Matter of Foreclosure of Tax Liens by County of Rensselaer [Riverside Ave. Corp.]*, 16 AD3d 928, 929 [2005], quoting RPTL 1138 [4] [b]). Moreover, in article 11 enforcement proceedings, the tax lien is presumed valid, and the tax district has no obligation "to plead or prove the various steps, procedures and notices for the assessment and levy of the taxes or other lawful charges against the parcels" (RPTL 1134; *see Matter of City of Troy v Greenberg*, 251 AD2d 926, 926 [1998]). Rather, it is the landowner who is required to establish any affirmative defense or procedural defect in the proceeding with competent evidence (*see* RPTL 1134; *Matter of City of Schenectady v Kearney*, 58 AD2d 711, 712 [1977]). A similar presumption of validity prevails in article 7 proceedings, where the tax district is not required to come forward with proof of the correctness of its valuation for assessment purposes (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 187 [1998]). It would be inconsistent with this statutory scheme to impose a burden on the County, as the landowner suggests, requiring proof of the potential monetary risk posed by acquisition of the parcel before a valid certificate of withdrawal may be filed in a foreclosure proceeding.

Finally, the case relied upon by the landowner does not require a different result. In *Matter of Vasilopoulos v Town of*

*Barker* (275 AD2d 515 [2000]), the Court found that the tax district had erroneously recited a ground for withdrawal from the current version of section 1138 (1) (d), when in fact the tax lien at issue there predated statutory amendments and was governed by a former version of the law. In addition, the enforcing officer had failed to comply with a requirement in the former version of the law to obtain the approval by resolution of the governing body before seeking withdrawal. In light of these two shortcomings in the enforcing officer's certificate, the Court's further observation that the record contained no evidence in support of a ground under the former law for the withdrawal of the parcel was not necessary to the case and did not amount to a holding that the enforcing officer is required to submit evidentiary proof (*id.* at 516-517).

Accordingly, nothing in RPTL article 11 requires the submission of evidence to support the enforcing officer's reason for withdrawing a property from foreclosure proceedings, other than the filing of a certificate of withdrawal setting forth the facts which render the parcel eligible for withdrawal from foreclosure. Inasmuch as the record demonstrates that the County's enforcing officer complied with the statutory requirements, the County properly withdrew the subject property from the article 11 foreclosure proceedings and, hence, application of the limitations period in section 1138 (5) is appropriate.

The Remaining Affirmative Defenses

The Supreme Court denied that branch of the County's motion which was for summary judgment dismissing the landowner's affirmative defenses of laches, estoppel, waiver, and improper assessment of the subject property. We take the opportunity now to address these defenses, and find them all to be without merit.

■ First, the landowner contends that this supplementary proceeding is barred under the doctrine of laches. A party's neglect in promptly asserting a claim may act as a bar to relief if the opposing party has been injured or prejudiced by the delay (*see Dwyer v Mazzola*, 171 AD2d 726, 727 [1991]). Here, the landowner failed to show undue delay. Under the statutory scheme, tax liens are not rendered unenforceable due to the passage of time (*see* RPTL 1160 [2]; *Russell v City of New York*, 22 AD2d 706 [1964], *affd* 16 NY2d 641 [1965]), and the County fully complied with the time limit of section 1138 (5). "The defense of laches is unavailable in an action at law commenced within the period of limitation" (*Matter of American Druggists'*

*Ins. Co.*, 15 AD3d 268 [2005]). Even if the defense were cognizable in this timely commenced supplementary proceeding, "mere delay alone, without actual prejudice, does not constitute laches" (*Dwyer v Mazzola*, 171 AD2d at 727 [internal quotation marks omitted]). The landowner failed to show that it suffered any injury or prejudice due to the County's alleged delay in bringing the proceeding after withdrawing the property from foreclosure and, thus, failed to establish an essential element of laches (*see Abrahamian v Tak Chan*, 33 AD3d 947, 949 [2006]; *Dwyer v Mazzola*, 171 AD2d at 727).

■ Second, the landowner contends that the County should be estopped from bringing the supplementary proceeding because withdrawal of the property from foreclosure was tantamount to an admission that the property is of little or no value and, thus, the County should be barred from initiating a supplementary proceeding to collect taxes which are based upon faulty assessments. "The doctrine of estoppel will be applied against governmental agencies only in exceptional cases" in which there has been "a showing of fraud, misrepresentation, deception, or similar affirmative misconduct, along with reasonable reliance thereon" (*Yassin v Sarabu*, 284 AD2d 531 [2001]; *see Mohl v Town of Riverhead*, 62 AD3d 969 [2009]). To establish estoppel, the misconduct of the public agency must have induced justifiable reliance by a party who then changed his position to his detriment (*see Allen v Board of Educ. of Union Free School Dist. No. 20*, 168 AD2d 403, 404 [1990]). Here, the County's withdrawal of the subject property from foreclosure to avoid potential liability can hardly be characterized as misconduct and, in any event, as with the defense of laches, the landowner failed to show any detrimental reliance, change of position, or injury caused by the County's action.

■ Third, the landowner contends that the County waived its right to collect the taxes when it withdrew the property from the foreclosure proceeding, in effect admitting its lack of value, constituting an affirmative act evidencing the County's intent to relinquish its right to collect taxes. Contrary to this contention, to establish a waiver, the landowner is required to adduce "proof that there was a voluntary and intentional relinquishment of a known and otherwise enforceable right" (*Golfo v Kycia Assoc., Inc.*, 45 AD3d 531, 533 [2007]; *see Peck v Peck*, 232 AD2d 540 [1996]). Here, the County did not relinquish its rights but decided to pursue enforcement through a supplementary proceeding instead of through a foreclosure proceeding. The fil-

ing of a certificate of withdrawal has no effect upon the tax lien (*see* RPTL 1138 [3] [a]), and after withdrawal, the enforcing officer is authorized to reinstate the foreclosure proceeding or to initiate a supplementary proceeding (*see* RPTL 1138 [3] [b]; *Matter of Foreclosure of Tax Liens by County of Rensselaer [Riverside Ave. Corp.]*, 16 AD3d at 929). The plain language of the statutory scheme indicates that the Legislature did not intend for the withdrawal of property from a foreclosure proceeding to constitute a waiver of any of the other enforcement devices, including foreclosure itself if reinstatement is warranted. The County's filing of the certificates of withdrawal, thus, did not evince an intent to relinquish its right to collect the delinquent taxes.

Finally, the landowner contends that its challenge to the assessed value should be tried as a defense in this proceeding, since it is not contesting the amount of tax due per se, but rather, the County's right to initiate this proceeding at all to collect the tax. As shown, however, the County is within its statutory rights to initiate this supplementary proceeding. As for the landowner's contention that the subject property is improperly valued for tax purposes, "[i]t is well established that one challenging a tax assessment must continue to pay his taxes and that the commencement of an assessment review proceeding does not stay the collection of taxes or enforcement procedures instituted by the taxing authority" (*W.T. Grant Co. v Srogi*, 52 NY2d 496, 515-516 [1981]; *see* RPTL 704 [3]; *Matter of County of Fulton v State of New York*, 76 NY2d 675, 678-679 [1990]; *Matter of County of Orange [CKC of N.Y.]*, 278 AD2d 416 [2000]; *Dimovich v Talev*, 248 AD2d 951, 952 [1998]). Moreover, a proceeding pursuant to article 7 of the Real Property Tax Law provides the "exclusive procedure for review of property assessments 'unless otherwise provided by law' " (*Niagara Mohawk Power Corp. v City School Dist. of City of Troy*, 59 NY2d 262, 268 [1983], quoting RPTL 700 [1]; *see Matter of Estate of Rogowsky v Board of Assessment Review of Vil. of Port Chester*, 191 AD2d 697, 697-698 [1993]).

Nothing in section 990 (1) or 1138 (5) provides authority for a taxpayer to assert a challenge to the assessed value as a defense to a supplementary proceeding brought by the County. To the extent that the County's reason for withdrawing the subject property from foreclosure has any bearing on its assessed value, the landowner is required to litigate that issue independently in the article 7 tax certiorari proceeding. The landowner's chal-

lenge to the tax assessment in an article 7 proceeding does not stay the County's right to pursue the enforcement devices available to it under articles 9 and 11 of the Real Property Tax Law, and this supplementary proceeding should go forward independently.

Conclusion

The County demonstrated that it properly withdrew the subject property from the tax foreclosure proceedings pursuant to RPTL 1138 (2) (a) and timely petitioned the Supreme Court for leave to institute a supplementary proceeding to collect delinquent taxes pursuant to section 1138 (5). The landowner conceded that it was personally liable for unpaid taxes on the property. Accordingly, the County established, prima facie, its entitlement to leave to institute a supplementary proceeding against the landowner for the purpose of collecting taxes, interest, and penalties claimed to be due and owing.

Inasmuch as the landowner's affirmative defenses are without merit and in light of the fact that the landowner failed to raise a triable issue of fact in opposition, the Supreme Court erred in denying the County's motion for summary judgment on the petition for leave to institute a supplementary proceeding and dismissing the landowner's affirmative defenses. Further, as the County is entitled to proceed with this supplementary proceeding independently of the RPTL article 7 proceeding, the Supreme Court erred in transferring this proceeding to be consolidated or joined with the tax certiorari proceeding.

Accordingly, the order is reversed insofar as appealed from, on the law, the petitioner's motion for summary judgment on the petition and dismissing the affirmative defenses is granted, that branch of the cross motion of Al Turi Landfill, Inc., which was, in effect, to transfer this proceeding to be consolidated or joined with a related tax certiorari proceeding pursuant to Real Property Tax Law article 7, pending in the same court, under index No. 7195/08 is denied, and the order is affirmed insofar as cross-appealed from.

DILLON, J.P., MILLER and DICKERSON, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, the petitioner's motion for summary judgment on the petition and dismissing the affirmative defenses is granted, and that branch of the cross motion of Al Turi Landfill, Inc., which was, in effect, to transfer this proceeding to be consolidated or joined with a related tax certiorari proceeding pursu-

ant to Real Property Tax Law article 7, pending in the same court under index No. 7195/08 is denied; and it is further, ordered that the order is affirmed insofar as cross-appealed from; and it is further, ordered that one bill of costs is awarded to the petitioner.