Matter of Ferncliff Cemetery Assn. v Town of Greenburgh (2020 NY Slip Op 02925)





Matter of Ferncliff Cemetery Assn. v Town of Greenburgh


2020 NY Slip Op 02925


Decided on May 20, 2020


Appellate Division, Second Department


Connolly, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 20, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
JEFFREY A. COHEN
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER, JJ.


2016-12854
 (Index No. 2868/15)

[*1]In the Matter of Ferncliff Cemetery Association, appellant, 
v
Town of Greenburgh, et al., respondents.



APPEAL by the petitioner, in a proceeding pursuant to CPLR article 78 to review a determination of the Town of Greenburgh Zoning Board of Appeals dated August 7, 2015, after a hearing, confirming a determination of the Town of Greenburgh Building Inspector dated December 16, 2013, denying the petitioner's application for a building permit, from a judgment of the Supreme Court (Rolf Thorsen, J.), dated November 15, 2016, and entered in Westchester County. The judgment denied the petition and dismissed the proceeding.



Turner & Turner, White Plains, NY (Frederick W. Turner and Bleakley Platt & Schmidt, LLP [William H. Mulligan, Jr., and James W. Glatthaar], of counsel), for appellant.
Timothy W. Lewis, Greenburgh, NY (Edward M. Lieberman of counsel), for respondents.



CONNOLLY, J.


OPINION & ORDER
For the reasons that follow, we hold that the sale of land designated for cemetery purposes to persons or entities with no affiliation to the cemetery, and with no authority of their own to operate a cemetery, constitutes an unequivocal affirmative act of abandonment of the right to use that land for cemetery purposes.
I. Factual and Procedural History
On February 13, 1902, the petitioner, Ferncliff Cemetery Association, was incorporated for the purpose of operating a cemetery in the respondent Town of Greenburgh. On April 7, 1902, by resolution, the Westchester County Board of Supervisors gave "consent" to the petitioner to use certain lands comprising approximately 101 acres in the Town for "[c]emetery purposes." At the time the petitioner obtained consent to use those lands for cemetery purposes, the 101-acre property was owned by a group of private individuals, including John C. Witte, who was a founding director of the petitioner. By deed dated October 26, 1903, those lands, comprising the entirety of the cemetery property, were transferred from John C. Witte and others to Ferncliff Realty Company, a for-profit corporation formed by Witte and others, inter alia, "[t]o construct, equip, improve, promote and develop . . . cemeteries." By deed dated December 28, 1907, Ferncliff Realty Company transferred the same lands comprising the entirety of the cemetery property to Grove Hill Realty Company, also a for-profit corporation, "subject to the rights of the [petitioner]."
In 1908 and 1909, the original 101 acres designated for cemetery purposes were divided into two distinct and separate parcels. A large portion of the property, in excess of 63 acres, on the north side of Secor Road was conveyed to the petitioner. The petitioner has undisputedly used the large parcel on the north side of Secor Road for cemetery purposes in a continuous and [*2]uninterrupted manner.
The issues in this case pertain to a portion of the approximately 33-acre parcel located on the south side of Secor Road, which has been untethered from the petitioner's sphere of control for several decades. By deed dated November 20, 1908, Grove Hill Realty Company sold a portion of the lands originally designated as cemetery property, comprising approximately 33 acres and lying to the south of Secor Road, to Adolph Lewisohn, a private individual. Notably, those 33 acres were transferred to Lewisohn "in fee simple" and "free from encumbrances," with no express reservation of any rights of the petitioner.
The 33 acres on the south side of Secor Road were then further divided into smaller parcels through a series of conveyances. At one point, the property located on the south side of Secor Road went through foreclosure and, ultimately, Nathan Shulman became the owner of a portion of the lands on the south side of Secor Road. By deed dated April 4, 1950, Shulman conveyed a 12.5-acre parcel to Grove Hill Realty Company, the entity that was responsible for dividing the original 101-acre parcel through conveyances in 1908 and 1909. With the exception of the 12.5-acre parcel conveyed to Grove Hill Realty Company, the balance of the 33-acre parcel to the south side of Secor Road was formally subdivided to create a housing development then-entitled "Country Club Homes at Hartsdale."
As is chronologically relevant to the facts of this case, in 1963, the Town Board of the Town amended its zoning regulations to provide, subject to certain exceptions not raised by the parties as relevant to this case, that cemeteries then in existence were permitted uses, but that the "[l]and area of existing cemeteries may not be increased." The Town's current zoning ordinance words this prohibition on the expansion of cemeteries as follows: "Cemeteries and crematories in existence on January 1, 1963, are permitted, provided that the land area of the cemetery shall not be increased" (Greenburgh Town Code § 285-36[B]).
By deed dated November 30, 1971, Grove Hill Realty Company conveyed the aforementioned 12.5-acre parcel to the petitioner. Accordingly, as of November 30, 1971, and continuing through today, the petitioner has been the common owner of approximately 63 acres to the north side of Secor Road and approximately 12.5 acres to the south side of Secor Road.
The 12.5-acre parcel to the south of Secor Road lies within a residential zoning district permitting the construction of single-family homes. In 1994, the petitioner applied for permission to construct a "maintenance facility" on the 12.5-acre parcel. In connection with the application, the petitioner sought a use variance to relieve it from the zoning restriction that the property be used only for single-family homes. However, that application was withdrawn in the face of community opposition.
In 2001, the petitioner applied for and obtained a building permit to construct a "New Single Family Residence (Caretaker's Cottage)" on the 12.5-acre parcel. That structure was built, and continues to occupy the site.
On December 10, 2013, the petitioner applied for a building permit to remove the existing cottage on the property and replace it with a new 5,000 square-foot "caretaker cottage with attached garage." The proposed attached garage would be used "to store equipment, materials and supplies associated with the caretakers' duties."
By letter dated December 16, 2013, the respondent John Lucido, the Town Building Inspector, denied the application, noting that the proposed caretaker's cottage and maintenance facility did not comply with existing zoning. The petitioner appealed the Building Inspector's determination to the respondent Town Zoning Board of Appeals (hereinafter the ZBA).
In a determination dated August 7, 2015, the ZBA confirmed the Building Inspector's determination, finding that the petitioner did not own the subject property in 1963 when the Town Board passed legislation prohibiting the expansion of cemeteries then in existence. The ZBA noted that, in 1963, the property was owned by Grove Hill Realty Company, an entity that had not been granted authority to operate a cemetery. The ZBA rejected any claim by the petitioner that there was "an identity of interests" between itself and Grove Hill Realty Company, finding that "[the petitioner] has not submitted any evidence to show that the owners/directors of Grove Hill [Realty Company] and the [petitioner] were related in 1950 and thereafter." Further, since the properties to the north and south of Secor Road were not in common ownership in 1963, the ZBA reasoned that the 12.5-acre parcel could not be considered "a protected enlargement of a non-conforming cemetery use." The ZBA also found that the language in the 1907 deed from Ferncliff Realty Company to Grove Hill Realty Company, that the transfer was "subject to the rights of the [petitioner]," did not create a valid deed restriction that burdened all subsequent owners.
Finally, in confirming the Building Inspector's determination, the ZBA clarified that, "to the extent that the proposed building contains a residence, whether for a proposed caretaker or otherwise, the applicant is entitled to a building permit, because single-family residences are permitted in the R-7.5 District." However, the ZBA held "that the garage/maintenance/storage portion of the proposed structure, which is much larger than what could be described as an accessory garage for the use of the occupant of the residential portion of the proposed structure, is more appropriately described as a maintenance facility, storage facility or commercial garage, which are not permitted in the R-7.5 District either as principal or accessory uses, and therefore such proposed uses would require a use variance."
The petitioner thereafter commenced this proceeding pursuant to CPLR article 78 to review the ZBA's determination. By order dated November 15, 2016, the Supreme Court found that the ZBA had a rational basis for its determination and that it would be improper for the court to substitute its judgment for the ZBA. Accordingly, the court, inter alia, denied the petition and dismissed the proceeding.
The petitioner appeals.
II. Legal Analysis
On appeal, the petitioner argues, inter alia, that the Westchester County Board of Supervisors' 1902 resolution giving it "consent" to operate a cemetery created a perpetual and irrevocable franchise, which could not be impaired by its sale of the property to the south of Secor Road.
In opposition, the respondents contend that the sale of the portion of the property to the south of Secor Road constituted an abandonment of cemetery use, which use could not be revived by reacquiring the property. The respondents argue that the Town's 1963 enactment of a prohibition on the expansion of existing cemeteries constitutes a bar to resumption of the cemetery use and that the petitioner did not obtain an irrevocable franchise to conduct cemetery operations on the parcel in question.
We agree with the Supreme Court's determination denying the petition and dismissing the proceeding. "The courts may set aside a zoning board determination only where the record reveals illegality, arbitrariness or abuse of discretion" (Matter of Cowan v Kern, 41 NY2d 591, 598). For the reasons that follow, the ZBA's determination was neither illegal, arbitrary, or an abuse of discretion.
As a general rule, a legal nonconforming use that predates the enactment of a zoning code (or an amendment to an existing zoning code) may continue to be used for that nonconforming purpose if "the principal use was in existence prior to the zoning ordinance and was not abandoned" (Gauthier v Village of Larchmont, 30 AD2d 303, 305 [emphasis added]; see Matter of Marzella v Munroe, 69 NY2d 967, 968; Town of Oyster Bay v Baker, 96 AD3d 824, 824-825).
Abandonment of a previously permitted use requires a "voluntary or affirmative act evincing an intention to relinquish" the right to continue the nonconforming use (Gauthier v Village of Larchmont, 30 AD2d at 305; see Matter of Prudence v Town of Ithaca Zoning Bd. of Appeals, 195 AD2d 662, 664; City of Binghamton v Gartell, 275 App Div 457, 460). "Abandonment does not occur unless there has been a complete cessation of the nonconforming use" (Matter of Marzella v Munroe, 69 NY2d at 968; see Matter of Daggett v Putnam, 40 AD2d 576, 576 ["Abandonment does not result unless the discontinuance of use is complete"]).
These principles apply to cemetery uses. "A holder of a deed of a cemetery lot . . . acquires only a privilege or license, exclusive of others, to make interments in the lot purchased, only so long as the lot remains a cemetery" (Clarke v Keating, 183 App Div 212, 214). However, such privilege or license may be extinguished upon abandonment of the cemetery use (see Hutchinson Land Co., Inc. v Whitehead Bros. Co., 218 App Div 682, 684-685; Clarke v Keating, 183 App Div at 214).
A cemetery use will not be deemed abandoned based upon "mere disuse" or by "omitting to make new interments therein" (Clarke v Keating, 183 App Div at 214). Indeed, it is well-settled that "[l]and used for cemetery purposes' encompasses land used for burials, as well as land held in reserve' for future burials even though no body has yet been interred therein" (Matter of Durante Bros. Constr. Corp. v St. John's Cemetery, 33 AD3d 5, 7; see People ex rel. Buffalo Burial Park Assn. v Stilwell, 190 NY 284, 291; Pinelawn Cemetery v Cesare, 64 AD2d 607, 608). A cemetery need not be "filled with graves" in order to retain its status as a cemetery (People ex rel. Buffalo Burial Park Assn. v Stilwell, 190 NY at 291). Moreover, "land used as a yard for storage of tools, machinery, and equipment is also actually used and occupied for cemetery purposes since the [*3]use of such yard is necessary and incidental to the proper maintenance of the cemetery and for carrying out the purposes for which it was organized" (Matter of Durante Bros. Constr. Corp. v St. John's Cemetery, 33 AD3d at 7-8 [internal quotation marks omitted]). "Guided by the principle that the operation of a cemetery is impressed with a public purpose, to perform the essential and worthy task of maintaining the burial of the dead, land actually used to ensure the functioning and survivability of the cemetery must also be included under the category of cemetery purposes" (id. at 8 [citation and internal quotation marks omitted]).
However, "where a cemetery has been so neglected as entirely to lose its identity as such, and is no longer known, recognized, and respected by the public as a cemetery, it may be said to be abandoned" (Hutchinson Land Co., Inc. v Whitehead Bros. Co., 218 App Div at 685). Moreover, an affirmative act that "undoes the character and association" of the cemetery "and leaves the land subject to sale or to legal partition . . . loses its sacredness as a resting place for the dead" (Clarke v Keating, 183 App Div at 214 [disinterment of bodies extinguished cemetery use]).
Here, the 1908 sale of the 33-acre parcel on the south side of Secor Road to Adolph Lewisohn, a private individual, which included the 12.5-acre parcel at issue, constituted an affirmative act of abandonment of the cemetery use of that property. The petitioner failed to submit any evidence to establish a continuous and uninterrupted relationship between itself and the persons or entities that owned the property from 1908 to 1971, when it reacquired the property.
Moreover, the petitioner's complete cessation of the cemetery use of the 12.5-acre parcel prior to the enactment of the Town's 1963 prohibition on the expansion of existing cemeteries constituted an abandonment of the cemetery use that could not be revived simply by reacquiring the property (see Matter of Daggett v Putnam, 40 AD2d at 576; cf. Gauthier v Village of Larchmont, 30 AD2d at 305). Additionally, because the petitioner was not authorized to operate a cemetery on the 12.5-acre parcel on January 1, 1963, any expansion of its undisputed authority to operate a cemetery on the parcel to the north of Secor Road is prohibited by Greenburgh Town Code § 285-36(B).
Contrary to the petitioner's contention, the Westchester County Board of Supervisors' 1902 resolution giving it "consent" to operate a cemetery over the original undivided land did not grant the petitioner an irrevocable "franchise" to conduct cemetery operations on the property. "A franchise is a special privilege conferred by government on individuals or corporations and does not belong to the citizens of a country generally by common right" (60 NY Jur 2d, Franchises § 1). A "general franchise of a corporation is its right to live and do business by the exercise of the corporate powers granted by the state" (People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Commrs., 174 NY 417, 435). "A special franchise is the right, granted by the public, to use public property for a public use, but with private profit, such as the right to build and operate a railroad in the streets of a city" (Lord v Equitable Life Assur. Socy. of U.S., 194 NY 212, 225; see New York Tel. Co. v Nassau County, 1 NY3d 485, 489 n 3 ["Special franchise property is property owned by utilities located in easements in public streets"]). Here, the 1902 resolution merely gave the petitioner "consent" to operate a cemetery, which consent related to property privately owned by the petitioner's affiliates. The 1902 resolution did not grant the petitioner the right to do anything on public property or for a public use (see 60 NY Jur 2d, Franchises § 1 ["A special franchise' is a vehicle or legal structure by means of which permission is obtained to function in an area where, in the absence of such special franchise, there would otherwise be a trespass committed"]). Moreover, the petitioner's contention runs counter to case law holding that the right to use land as a cemetery is only a "privilege or license" to make interments, which may be abandoned (Clarke v Keating, 183 App Div at 214; see Hutchinson Land Co., Inc. v Whitehead Bros. Co., 218 App Div at 684; see also 60 NY Jur 2d, Franchises § 1 ["permission to exercise a preexisting right or privilege that has been subjected to regulation in the interests of public welfare is merely a license and not a franchise"]).
Finally, we agree with the ZBA's determination that the notation in the 1907 deed from Ferncliff Realty Company to Grove Hill Realty Company, that the property was being sold "subject to the rights of the [petitioner]," which notation was not made in later deeds transferring the property, did not create a covenant that runs with the land, binding all successors in interest. "[A] covenant will run with the land and will be enforceable against a subsequent purchaser of the land at the suit of one who claims the benefit of the covenant, only if the covenant complies with certain legal requirements" (Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank, 278 NY 248, 254). For a covenant to run with the land, "(1) it must appear that grantor and grantee intended that the covenant should run with the land; (2) it must appear that the covenant is one touching' or concerning' the land with which it runs; [and] (3) it must appear that there is privity of estate' between the promisee or party claiming the benefit of the covenant and the right to enforce it, and [*4]the promisor or party who rests under the burden of the covenant" (id. at 255; 328 Owners Corp. v 330 W. 86 Oaks Corp., 8 NY3d 372, 382-383 [internal quotation marks omitted]). Here, the 1907 deed from Ferncliff Realty Company to Grove Hill Realty Company contains no description of the "rights" of the petitioner that the transfer was purportedly made "subject to" and, thus, the language in the deed cannot be construed in favor of the existence of a covenant (see Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY 242, 249 [covenants "must be construed as they read and not be given a construction extending beyond the literal meaning of their terms"]; 11 Warren's Weed New York Real Property § 121.08 [2019] ["Since the policy of the law is to favor the free, unobstructed use of property, covenants restricting such use will be strictly construed against those seeking to enforce them"]). Moreover, even if a valid covenant was created, the fact that Grove Hill Realty Company, an entity purportedly affiliated with the petitioner, deeded the property to a private individual "in fee simple" and "free from encumbrances," with no express reservation of any rights to the petitioner, evidences an intent to extinguish any such covenant (see Goldman v Lewis, 226 App Div 745, 745), and estops the petitioner from any attempt to enforce it (see Obrock v Crolly Co., Inc., 209 App Div 624, 627).
The petitioner's remaining contentions are without merit.
Accordingly, the judgment is affirmed.
DILLON, J.P., COHEN and CHRISTOPHER, JJ., concur.
ORDERED that the judgment is affirmed, with costs.
ENTER:
Aprilanne Agostino
Clerk of the Court