Matter of Foreclosure of Tax Liens v Goldman (2018 NY Slip Op 07123)





Matter of Foreclosure of Tax Liens v Goldman


2018 NY Slip Op 07123


Decided on October 24, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 24, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
REINALDO E. RIVERA
ROBERT J. MILLER
HECTOR D. LASALLE, JJ.


2017-00694
 (Index No. 3559/16)

[*1]In the Matter of Foreclosure of Tax Liens, etc. County of Orange, petitioner-appellant,
v
Tammy Burton Goldman, respondent.


Langdon C. Chapman, County Attorney, Goshen, NY (Matthew J. Nothnagle of counsel), for petitioner-appellant.



DECISION & ORDER
In a proceeding pursuant to RPTL article 11 to foreclose a tax lien, the petitioner appeals from an order of the Supreme Court, Orange County (Maria S. Vazquez-Doles, J.), dated October 21, 2016. The order denied the petitioner's motion for summary judgment on the petition and to strike the answer, and, in effect, upon searching the record, dismissed the petition.
ORDERED that the order is affirmed, without costs or disbursements.
This proceeding involves a parcel of real property (hereinafter the subject property) located in the Town of Newburgh. The County of Orange alleged that the Town of Newburgh had issued tax bills relating to the subject property which were not paid and which became tax liens on the property by operation of law (see RPTL 902).
On November 1, 2013, the County filed with the Orange County Clerk a list of delinquent taxes (see RPTL 1122). The subject property was included in this list of delinquent taxes.
The County subsequently commenced proceedings to foreclose on the outstanding tax liens that were set forth in the list of delinquent taxes with a "Petition and Notice of Foreclosure" dated August 5, 2014 (see RPTL 1123). The portion of the petition that has been included in the record on appeal indicated that the last day to redeem the subject property was March 2, 2015. The record on appeal does not include the total redemption amount that was due on the subject property at the time these proceedings were commenced.
The petition stated that if a person with the right to redeem the property did not redeem or answer by March 2, 2015, that person would be "forever barred and foreclosed of all his or her right, title and interest and equity of redemption in and to the [subject property]." Under such circumstances, the County would be entitled to take title to the subject property in fee simple absolute (see RPTL 1136[3]; Kennedy v Mossafa, 100 NY2d 1, 8). Once vested with title to the subject property, the County would be "authorized to sell and convey the real property so acquired, which shall include any and all gas, oil or mineral rights associated with such real property, either with or without advertising for bids" (RPTL 1166[1]; see Kennedy v Mossafa, 100 NY2d at 8).
The County alleged that on October 16, 2014, it "mailed the Petition and Notice of [*2]Petition to the record owners of the parcel, Thomas Dixon and Sharon Dixon, . . . at the address in the Town's records." The United States Postal Service returned the certified mailing with a legend "forward time exp[ired]." A P.O. Box located in Pine Bush, New York, was listed above the note "return to sender."
The County alleged that an unidentified individual mailed notice of the proceeding to Thomas Dixon and Sharon Dixon at the P.O. Box in Pine Bush. The record reflects that an individual named Stephanie Burton signed for the certified mailing on January 7, 2015. The County alleged that the United States Postal Service did not return the regular mailing.
In January and February 2015, employees of the Orange County Real Property Tax Service Agency allegedly affixed notices of the proceeding "at every parcel of real property in the then-underlying tax foreclosure proceeding." An affidavit from one of these employees stated that notice of the proceeding was posted at the subject property on February 11, 2015.
A document titled "Verified Answer of Thomas O. Dixon and Sharon L. Dixon" was interposed in response to the County's petition. It was dated February 27, 2015, and verified by an individual named Tammy Burton Goldman. The answer was signed by Goldman's attorney and served on the County by counsel.
The answer stated that Thomas Dixon and Sharon Dixon were "the fee owners" of the subject property. The answer asserted that Thomas Dixon died on August 10, 2002, and that Sharon Dixon died on March 8, 2013.
The answer stated that "[the Dixons'] niece, Tammy Burton Goldman indicates that no estate proceeding has been commenced on behalf of either of the decedents." The answer stated that Goldman "resides in Nashville, Georgia."
In the answer, Goldman's attorney stated: "I am in the process of being retained to open estate proceedings therein naming an administrator for the estates of decedents who . . . passed away without wills." The answer concluded with the assertion that "if in fact, open taxes on this property are rightfully due and owing . . . the yet unnamed personal administrator of said estates would be the responsible party to be named in the tax proceedings."
Attached to the answer was a copy of Sharon Dixon's death certificate. Her death certificate set forth the date of Sharon Dixon's death, along with other personal information, including the names of her parents, the date of her burial, and the name and address of the relevant funeral home. The death certificate listed an individual named Kevin Dixon as the source of this personal information about Sharon Dixon.
In December 2015, the County moved for judgments of foreclosure with respect "to each parcel in the tax foreclosure proceeding for which no payment was made and no Answer served." The County also requested "an Order of Severance as to each parcel for which an Answer was served," including the subject property.
On March 30, 2016, the Supreme Court issued a judgment of foreclosure which, among other things, directed the severance of this proceeding. In accordance with the judgment, this proceeding was severed.
The County subsequently applied for an index number for this severed proceeding. In its application, the County listed Goldman as the only respondent.
This proceeding was subsequently assigned Supreme Court Index Number 3559/16. This proceeding's caption, in accordance with the County's application, lists Goldman as the sole respondent.
Sometime in August 2016, the County moved "for an Order striking Respondent's [*3]Answer and granting the Petitioner a Judgment of foreclosure." In an affirmation, a Chief Assistant County Attorney asserted that the answer "has no merit." He stated that he had "reviewed the records of the Orange County Surrogate, and . . . found no proceedings with respect to any estate of Thomas Dixon or Sharon Dixon." He also stated that he had reviewed the records of the Orange County Clerk and "found no documents indicating that a person named Tammy Burton Goldman or Tammy Burton has any right, title or interest in [the subject property]."
The County also submitted a memorandum of law in support of its motion. The County argued that Goldman was the proper respondent to this proceeding and that she had received actual notice thereof. The County argued that "[Goldman] seems to believe that if a property owner dies, his or her heirs can simply neglect to file probate proceedings, negate the taxing municipality's ability to enforce, and live tax-free on the property forever."
There was no opposition to the County's motion. The attorney who drafted and signed the answer, upon receiving notice of the County's motion, stated that his office did not represent Goldman in this case. The attorney stated that his office had represented Goldman "on an estate matter several years ago, but that matter [was] complete."
In the order appealed from, the Supreme Court concluded that since the proceeding was commenced against deceased individuals, it was a nullity. Accordingly, the court denied the County's motion "without prejudice" and, in effect, upon searching the record, dismissed the petition. The court stated that the County "should seek the appointment of an administrator and recommence this [proceeding] with notice to the proper parties."
The County appeals from the order. Goldman, the only other party to this proceeding, has not submitted an appellate brief. For the reasons that follow, we affirm the Supreme Court's order.
"[I]t is well established that the dead cannot be sued" (Marte v Graber, 58 AD3d 1, 3). Accordingly, "[a] party may not commence a legal action or proceeding against a dead person, but must instead name the personal representative of the decedent's estate" (Jordan v City of New York, 23 AD3d 436, 437; see Krysa v Estate of Qyra, 136 AD3d 760, 760-761; Dime Sav. Bank of N.Y. v Luna, 302 AD2d 558, 558; see also 1-210 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 210.04).
Although the passage of time is no bar to the County's enforcement of tax liens (see RPTL 1160), as a general matter, "[t]he remedy for a [party] who faces the running of the Statute of Limitations under these circumstances is to petition the Surrogate's Court pursuant to SCPA 1002 for the appointment of . . . [a] personal representative of the estate" (Laurenti v Teatom, 210 AD2d 300, 301). The Surrogate's Court Procedure Act provides that, depending on the circumstances of the particular case, letters of administration may be granted to "persons who are distributees of an intestate" (SCPA 1001[1]), or to certain other individuals including "the public administrator, . . . the chief fiscal officer of the county, . . . the petitioner, in the discretion of the court, or . . . any other person or persons" (see SCPA 1001[8]).
Similarly, if the death of a party occurs after the commencement of a proceeding or action "and the claim for or against him [or her] is not thereby extinguished[,] the court shall order substitution of the proper parties" (CPLR 1015[a]). "A motion for substitution may be made by the successors or representatives of a party or by any party" (CPLR 1021; see Dieye v Royal Blue Servs., Inc., 104 AD3d 724, 725).
"The death of a party divests the court of jurisdiction and stays the proceedings until a proper substitution has been made pursuant to CPLR 1015(a)" (Singer v Riskin, 32 AD3d 839, 839-840). "Moreover, any determination rendered without such substitution will generally be deemed a nullity" (id. at 840; see Hicks v Jeffrey, 304 AD2d 618, 618). "A motion for substitution pursuant to CPLR 1021 is the method by which the court acquires jurisdiction" over the deceased party's successors in interest, and such a motion "is not a mere technicality" (Bossert v Ford Motor Co., 140 [*4]AD2d 480, 480; see Matter of Einstoss, 26 NY2d 181, 189-190; Singer v Riskin, 32 AD3d at 840).
"In most instances a personal representative appointed by the Surrogate's Court should be substituted . . . to represent the decedent's estate" (Lambert v Estren, 126 AD3d 942, 943; see Dieye v Royal Blue Servs., Inc., 104 AD3d at 725; see also 3-1015 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 1015.06). "However, in the event no such representative exists, an appropriate appointment may be made by the Supreme Court and that individual may be substituted in place of the decedent" (Lambert v Estren, 126 AD3d at 943; see Dieye v Royal Blue Servs., Inc., 104 AD3d at 725; Grillo v Tese, 113 AD2d 871, 873; see also Matter of St. Luke's-Roosevelt Hosp. Ctr., 261 AD2d 320, 320-321). Indeed, "[t]he Supreme Court is a court of general jurisdiction with the power to appoint a temporary administrator, and may do so to avoid delay and prejudice in a pending action [or proceeding]" (Dieye v Royal Blue Servs., Inc., 104 AD3d at 726; see Laroche v Laroche, 162 AD3d 1000; Harding v Noble Taxi Corp., 155 AD2d 265, 266; see also Grillo v Tese, 113 AD2d at 873). "The determination whether to exercise its authority to appoint a temporary administrator is addressed to the broad discretion of the Supreme Court" (Laroche v Laroche, 162 AD3d at 1001; see Rosenfeld v Hotel Corp. of Am., 20 NY2d 25, 28; Meczkowski v E.W. Howell Co., Inc., 63 AD3d 803, 804).
Here, the foreclosure proceeding was commenced against the record owners of the subject property with the filing of the petition of foreclosure (see RPTL 1123; Matter of County of Orange [Al Turi Landfill, Inc.], 75 AD3d 224, 232). However, the record owners of the subject property had died before this proceeding was commenced against them. Accordingly, this proceeding "was a nullity from its inception" (Krysa v Estate of Qyra, 136 AD3d at 760; see Rivera v Bruchim, 103 AD3d 700, 700-701). The fact that an attorney retained by Goldman purported to answer on behalf of the deceased individuals did not confer jurisdiction over their respective estates (see Arbelaez v Chun Kuei Wu, 18 AD3d 583, 584). Furthermore, the County's act of amending the caption of the void petition to eliminate the names of the record owners and to include Goldman as the sole respondent was ineffective to retroactively render this proceeding properly commenced (see Krysa v Estate of Qyra, 136 AD3d at 761; Wendover Fin. Servs. v Ridgeway, 93 AD3d 1156, 1157; Marte v Graber, 58 AD3d at 4-5). Under the circumstances, the proceeding was properly dismissed (see e.g. Maldonado v Law Off. of Mary A. Bjork, 64 AD3d 425, 425-426).
Moreover, even if the proceeding had been properly commenced against the record owners (cf. RPTL 1122[6][b]; 1123[3]), once the County and the Supreme Court were made aware of their deaths, it was incumbent upon the County to substitute a personal representative of the deceased parties' estates before the matter could proceed (see CPLR 1015[a]; 1021; Singer v Riskin, 32 AD3d at 839-840). The County's act of amending the caption of the petition to name Goldman as the sole respondent would not have constituted a proper substitution under CPLR 1015(a), given that Goldman had not been appointed to represent the deceased individuals' estates (see Maldonado v Altemburger, 66 AD3d 570, 570-571; Maldonado v Law Off. of Mary A. Bjork, 64 AD3d at 426; Abley Props., Inc. v Reid, 52 AD3d 442, 443; Rumola v Maimonides Med. Ctr., 37 AD3d 696, 696-697). Indeed, the answer served in this proceeding did not allege that Goldman had any interest in the deceased individuals' estates and the County itself, in moving for summary judgment, took the position that there was no evidence that Goldman had "any right, title or interest in [the subject property]."
We are unaware of any exceptions to the general principles which prohibit a party from commencing or maintaining a proceeding against a deceased individual. We have not been referred to any authority upholding an exception to these general principles, or to an example of a case that was properly commenced or maintained against individuals who were known to be deceased.
Our dissenting colleague contends, without citation to any positive authority, that in rem proceedings may be properly commenced and maintained against individuals who are known to be deceased so long as the County has provided those deceased individuals with notice of the proceeding in accordance with statutory law. We are unaware of any purpose such notice would serve to the deceased individuals, and unaware of "any method for serving with process those who [*5]have moved beyond the vale" (Marte v Graber, 58 AD3d at 4).
In any event, "the procedure in special proceedings is the same as in actions and is governed by the CPLR provisions applicable to actions except as otherwise prescribed by law" (Human Dev. Servs. of Port Chester v Zoning Bd. of Appeals of Vil. of Port Chester, 67 NY2d 702, 705; see CPLR 103[b]). Accordingly, in the absence of any affirmative legislation explicitly authorizing the County to commence or maintain an in rem tax lien foreclosure proceeding against deceased individuals (cf. CPLR 1015[a]; 1021), there is no statutory reason to distinguish between the forms of civil judicial proceedings with respect to this issue (see CPLR 103[b]).
Indeed, this Court has previously applied these general principles to an in rem tax lien foreclosure case (see NYCTL 2004-A Trust v Archer, 131 AD3d 1213, 1214). In that case, this Court determined that the failure to substitute the administrator of the estate of a deceased defendant deprived the Supreme Court of jurisdiction (see id. at 1214). Numerous trial-level decisions have similarly applied these principles to proceedings in rem (see NYCTL 2009-A Trust v 706 Fourth Ave., LLC, 39 Misc 3d 1202[A], 2013 NY Slip Op 50402[U] [Sup Ct, Kings County]; East Harlem Pilot Block Bldg. 1 Hous. Dev. Fund Corp. v Serrano, 153 Misc 2d 776; 100 W. 72nd St. Assoc. v Murphy, 144 Misc 2d 1036). In the absence of any countervailing authority, we conclude that the prohibition against commencing or maintaining an action or proceeding against a deceased individual, which applies to every other type of judicial proceeding, is applicable here, too.
Our dissenting colleague nevertheless maintains that, as a constitutional matter, the Supreme Court could properly exercise jurisdiction in this case without directing any notice to the successors in interest of the record owners. Our colleague asserts that a tax lien foreclosure proceeding is not against any individual, but rather, is against the subject property itself and so it is unnecessary to acquire personal jurisdiction over any individuals whose interests may be affected by these types of proceedings.
We must respectfully disagree. Personal jurisdiction has two fundamental components (see Keane v Kamin, 94 NY2d 263, 265). "One component involves service of process, which implicates due process requirements of notice and opportunity to be heard" (id. at 265). "Notice of a proceeding is . . . a fundamental component of a court's proper exercise of personal jurisdiction over a party" (John Galliano, S.A. v Stallion, Inc., 15 NY3d 75, 80; see e.g. Matter of Greenburgh Cent. School Dist. No. 7 v Westchester County Human Rights Commn., 82 AD3d 980, 981).
"The other component of personal jurisdiction involves the power, or reach, of a court over a party, so as to enforce judicial decrees" (Keane v Kamin, 94 NY2d at 265). "This consideration—the jurisdictional basis—is independent of service of process" (id.). "To satisfy the jurisdictional basis there must be a constitutionally adequate connection between the defendant, the State and the action" (id. at 265; see International Shoe Co. v Washington, 326 US 310).
"Jurisdictional basis on the one hand and the requirement of notice on the other, although both are products of due process and each is essential to jurisdiction, are best investigated separately" (Siegel, NY Prac § 58 at 86 [5th ed 2011]). As this case well illustrates, "[a] failure to separate them can breed confusion" (id.).
Contrary to the contention of our dissenting colleague, the physical presence of property within a state merely provides a jurisdictional basis for the exercise of personal jurisdiction (see Shaffer v Heitner, 433 US 186, 206-212; see also Restatement [Second] of Conflict of Laws § 38, Comment b; accord CPLR 302[a][4]). It does not obviate the independent notice component of personal jurisdiction (see Mullane v Central Hanover Bank & Trust Co., 339 US 306, 312-313; see also Restatement [Second] of Conflict of Laws § 57, Comment c).
Furthermore, the United States Supreme Court has explicitly rejected the fiction that an in rem proceeding is not asserted against any individuals, but only against the property itself (see Shaffer v Heitner, 433 US at 216). Rather, the Court has long acknowledged that "an adverse [*6]judgment in rem directly affects the property owner by divesting him [or her] of his [or her] rights in the property before the court" (id. at 206 [emphasis added]; see Mennonite Bd. of Missions v Adams, 462 US 791, 796 n 3; Schroeder v City of New York, 371 US 208, 213; see also Restatement [Second] of Judgments § 6, Comment b).
Recognizing that "[n]otice by publication is a poor and sometimes a hopeless substitute for actual service of notice" (New York City v New York, N.H. & H.R. Co., 344 US 293, 296), the United States Supreme Court has concluded that where an individual's legally protected interests are directly affected by the proceedings in question, "notice by publication is not enough" (Schroeder v City of New York, 371 US at 212; see Mullane v Central Hanover Bank & Trust Co., 339 US at 318).
The United States Supreme Court's case law has thus "required the State to make efforts to provide actual notice to all interested parties comparable to the efforts that were previously required only in in personam actions" (Mennonite Bd. of Missions v Adams, 462 US at 796 n 3). In other words, persons claiming interests in real property that is the subject of an in rem proceeding "are entitled to notice that functionally approximates the service of process that is employed in in personam actions" (Restatement [Second] of Judgments § 5, Comment b; see Schroeder v City of New York, 371 US at 212-213; Mullane v Central Hanover Bank & Trust Co., 339 US at 312-315; see also Restatement [Second] of Conflict of Laws § 57, Comment c).
We acknowledge that the United States Supreme Court "has not hesitated to approve of resort to publication as a customary substitute . . . where it is not reasonably possible or practicable to give more adequate warning" (Mullane v Central Hanover Bank & Trust Co., 339 US at 317). "Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights" (id.). However, "[e]xceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties" (id. at 318).
Here, the County contends that the individuals who acquired an interest in the subject property by virtue of the death of the record owners are unknown. The County argues that notice to these individuals is impractical since, if it is required to provide such notice, it "would have to not only consult the internet and library materials, but probably retain an investigator to canvass among present and former neighbors and employers, in Nashville, Newburgh, and who knows where else, not just to find Ms. Goldman, but some indeterminate number of brothers, sisters, aunts, uncles, nieces, nephews, cousins, or whomever."
Echoing these concerns, our dissenting colleague similarly concludes that there is no legal authority "that even remotely suggests that the taxing authority is required to undertake an investigation to ascertain the whereabouts of missing taxpayers or to identify and locate the relatives of deceased or absent taxpayers, such as by conducting an Internet search or searching the public records of all the counties or other places where an absent, missing, or deceased taxpayer may have lived" (dissenting op at 14).
These arguments ignore the fact that the Surrogate's Court Procedure Act makes available a procedure by which the interests of these unknown individuals may be protected even though they have not yet been identified or located (see SCPA 1002). As in any other case involving the death of a defendant, the County need not provide notice to every potential beneficiary of the record owners' estates, it need only provide notice to the representative of their estates (see CPLR 1015[a]; 1021). As we have already noted, if the County is unable to identify or locate the representative of the record owners' estates, it may secure the appointment of one either in the Surrogate's Court (see SCPA 1002), or, if circumstances warrant, in the Supreme Court (see Dieye v Royal Blue Servs., Inc., 104 AD3d at 726).
Accordingly, the situation presented in this case may be distinguished from cases where the record owner no longer lives at the address on file, or has secretly conveyed his or her [*7]interest to another. In those situations, notice by posting and publication was made necessary due to a lack of any alternative means to protect the interests of the record owners. In addition, the defendants in those situations are at least chargeable with notice of the fact that they have an interest in the property at issue. By contrast, where the record owners of property have died, the individuals who succeed to their interests may not be aware that the record owners are dead or that they have any interest in the property.
Under the circumstances presented, it cannot be said that the "probably futile means of notification" that was undertaken here was "all that the situation permits" (Mullane v Central Hanover Bank & Trust Co., 339 US at 317). The availability of alternative means to protect the due process interests of the unknown parties renders the notice provided here constitutionally deficient. Accordingly, even if principles of state law did not independently require the County to name and provide notice to the representative of the deceased owners' estates, the notice provided here was constitutionally insufficient to permit the Supreme Court to exercise personal jurisdiction over the record owners' successors in interest.
In reaching our conclusions, we are not unmindful of the important interest that the County has in efficiently collecting delinquent taxes (see Kennedy v Mossafa, 100 NY2d at 10-11). However, the interests of the County must be balanced with the property rights of individuals which may be extinguished forever if they default in a tax foreclosure proceeding (see RPTL 1131). As previously observed, a tax foreclosure proceeding permits the County to take title to privately-held property for the nonpayment of property taxes even where the taxes owing represent only a small fraction of the value of the land (see RPTL 1136[3]; 1166[1]; Kennedy v Mossafa, 100 NY2d at 8). Thus, the County may realize a substantial windfall if a landowner defaults in a tax foreclosure proceeding. Given the substantial property interests at stake, it is imperative for the courts to continue to safeguard the due process rights of those whose property is threatened by ensuring that notice is adequate to support the exercise of personal jurisdiction over them.
Under the circumstances, we agree with the Supreme Court's determination to deny the County's motion for summary judgment on the petition and to strike the answer, and, in effect, upon searching the record, to dismiss the petition.
RIVERA, MILLER and LASALLE, JJ., concur.
SCHEINKMAN, P.J., dissents, and votes to reverse the order, on the law, and grant the petitioner's motion for summary judgment on the petition and to strike the answer, with the following memorandum:
The Supreme Court and my colleagues in the majority conclude that this in rem tax lien foreclosure proceeding is a nullity because the record owners of the property were deceased at the time it was commenced. I respectfully disagree.
On November 1, 2013, the County of Orange Department of Finance (hereinafter Department of Finance) filed with the Orange County Clerk a list of delinquent taxes pursuant to Real Property Tax Law § 1122. The subject property, among others, was included on this list of delinquent taxes for taxes that were not paid to the Town of Newburgh. Via a petition and notice of foreclosure dated August 5, 2014, the County's Commissioner of Finance commenced proceedings to foreclose all of the outstanding tax liens set forth in the list of delinquent taxes.
According to an affidavit of Kathlee A. DeRose, who was a Real Property Tax Supervisor in the Department of Finance, on October 16, 2014, the County mailed the petition and notice of foreclosure to the record owners of the subject property, Thomas Dixon and Sharon Dixon (hereinafter together the Dixons), at the address in the Town's records, 5431 Route 9W, Newburgh, NY 12550, by certified and regular mail. The United States Postal Service returned the certified mailing with a legend stating "forward time exp[ired]" and listing a new address, P.O. Box 1195, Pine Bush, NY 12566. According to DeRose, the County mailed another copy of the petition and notice of foreclosure to the Dixons at the new address, by certified and regular mail. An individual [*8]named Stephanie Burton signed for the certified mailing. The United States Postal Service did not return the regular mailing. According to an affidavit of John I. McCarey, the Director of the Orange County Real Property Tax Service Agency, he and another member of the Agency affixed a notice of the proceeding to the front door of the subject property on February 11, 2015.
A document entitled "Verified Answer of Thomas O. Dixon and Sharon L. Dixon" was interposed in response to the County's petition. It was verified by Tammy Burton Goldman, a niece of the Dixons who resided in Nashville, Georgia, and signed by Robert M. Graubard of Gary Greenwald & Partners, P.C. (hereinafter the Greenwald firm), as Goldman's attorney. The answer alleged that the Dixons were the "fee owners" of the subject property, that Thomas Dixon had died on August 10, 2002, and that Sharon Dixon had died on March 8, 2013. The answer further alleged that "no estate proceeding [had] been commenced on behalf of either of the decedents," and that the Greenwald firm was "in the process of being retained to open estate proceedings . . . naming an administrator for the estates of decedents who . . . passed away without wills." The only defense asserted in the answer was that "if in fact . . . open taxes on this property are rightfully due and owing . . . the yet unnamed personal administrator of said estates would be the responsible party to be named in the tax proceedings." Attached to the answer was a copy of Sharon Dixon's death certificate.
In December 2015, the County moved for a judgment of foreclosure as to each parcel in the tax foreclosure proceeding for which no payment was made and no answer was served. In a judgment dated March 30, 2016, the Supreme Court, inter alia, severed the proceeding as to each parcel for which an answer had been imposed, including the subject property, and directed the County to cause separate index numbers to be assigned to each such answer. The County then applied for an index number for this severed proceeding. In its application, the County listed Goldman as the respondent to the petition. The proceeding was subsequently assigned its own Supreme Court index number, and the caption listed Goldman as the sole respondent.
By notice of motion dated August 16, 2016, the County moved for an order "striking Respondent's Answer and granting the Petitioner a Judgment of foreclosure." In a supporting affirmation, the County's attorney stated that he had reviewed the records of the Orange County Surrogate and found no proceedings with respect to any estate of Thomas Dixon or Sharon Dixon. In support of its motion, the County asserted that the answer submitted by Goldman had no merit, as the fact that no personal representative of the Dixons' estates had been appointed does not preclude the County from moving forward with the tax lien foreclosure proceeding. No response to the motion was filed with the Supreme Court. After being served with the motion, the Greenwald firm wrote to the County to advise it that it did not represent Goldman in this case, and that it "represented her on an estate matter several years ago, but that matter is complete." The Greenwald firm noted that it tried contacting Goldman via phone numbers that it had on file, but those numbers were disconnected or out of service. The County forwarded this letter to the Supreme Court. The court denied the County's motion and, sua sponte, dismissed the proceeding, deeming the proceeding to have been a nullity because the record owners of the property were deceased at the time of the commencement of the proceeding.
My colleagues in the majority begin with the principle that the dead cannot be sued (see majority op at 4, citing Marte v Graber, 58 AD3d 1, 3). I have no dispute with this proposition. It is axiomatic that a party may not "commence a legal action or proceeding against a dead person" (US Bank N.A. v Cadeumag, 147 AD3d 881, 881; see Gorbaty v Brodsky, 142 AD3d 584, 585; Krysa v Estate of Qyra, 136 AD3d 760). However, respectfully, this principle simply does not apply here, where no individual person, dead or alive, is being sued. The land is what has been sued.
In other words, this tax lien foreclosure proceeding is not against the Dixons or any other party individually, but rather, is an in rem proceeding brought against the subject property itself (see RPTL 1120; CPLR 214[2]; Reichert v Stilwell, 172 NY 83, 88-89; Matter of Van Dorn, 225 AD2d 969, 970; Rimelon DC, LLC v Estate of Robinson, 2010 WL 4626050, 2010 DC Super LEXIS 4, *20-21 [DC Super Ct, 2008 CA 529 L(RP)]; Siegel, NY Prac § 103 at 218-219 [6th ed 2018]). The petition does not seek a deficiency judgment against the property owners (see HSBC Bank USA [*9]v Ungar Family Realty Corp., 111 AD3d 673, 673-674; cf. American Airlines Fed. Credit Union v Costello, 161 AD3d 819, 819-820).
The majority's citation to Matter of County of Orange (Al Turi Landfill, Inc.) (75 AD3d 224, 232) is, in my view, misplaced. The thoughtful summary of tax foreclosure procedure contained in that case simply does not state that a tax foreclosure proceeding is "commenced against the record owners" (majority op at 5). Rather, what this Court in Al Turi observed is that there are several methods of collecting delinquent taxes. One method, not invoked here, is to hold the owners personally liable and levy on their personal property (see Matter of County of Orange [Al Turi Landfill, Inc.], 75 AD3d at 232, citing RPTL 904[4] and 926[2]). Surely, resort to that method would require in personam jurisdiction. Another means of collection is, after filing a list of delinquent taxes with the county clerk, to file a petition in foreclosure (see Matter of County of Orange [Al Turi Landfill, Inc.], 75 AD3d at 232, citing, inter alia, RPTL 1123[1] and 1122[8]). That a foreclosure proceeding is an in rem action, only against the land, is made clear in Al Turi by this Court's repeated references to the ability of the enforcing officer to withdraw "the parcel" from tax foreclosure—the parcel, not the individuals or entities that own the parcel (Matter of County of Orange [Al Turi Landfill, Inc.], 75 AD3d at 232-233).
Nor does NYCTL 2004-A Trust v Archer (131 AD3d 1213) provide, in my view, support for the position taken by the majority. True, that case was a tax foreclosure case. But the issue was not whether there was jurisdiction to foreclose on the realty. The dispute was over who was entitled to the surplus proceeds from the sale of the foreclosed property, a matter of indifference to the taxing authority, and a matter involving a dispute between living persons for which personal jurisdiction was required.
The other appellate authorities cited by the majority are cases involving actions at law in which personal jurisdiction over all parties is essential. Where personal jurisdiction is required, it is obtained by service on the person in the state or service on the person outside the state where there is constitutionally and statutorily sufficient nexus between the person and the state in which the action is commenced (see CPLR 301, 302). In contrast, here, jurisdiction in a tax foreclosure proceeding is dependent upon the presence of the real property in the state; while constitutionally adequate notice to persons interested in the property must be given, that is a concept of due process, not a concept of judicial jurisdiction. I respectfully submit that my colleagues have conflated these two distinct principles.
My colleagues perceive that my view is that "in rem proceedings may be properly commenced and maintained against individuals who are known to be deceased" (majority op at 5-6). That, I suggest respectfully, reflects a misunderstanding of both my position and the concept of in rem jurisdiction. In rem proceedings are not "commenced and maintained against individuals" (id. at 6), whether living or deceased. It is fundamental to an understanding of jurisdictional concepts that in rem jurisdiction is jurisdiction over a res—a thing (see Siegel, NY Prac § 101 at 215). Yes, notice of the case must be given in accordance with due process requirements, but as long as the plaintiff is only seeking to affect the interests in the res, jurisdiction over the res provides all the jurisdiction that is required (see id.).
As for notice, Real Property Tax Law § 1125 provides that personal notice of the commencement of a tax lien foreclosure proceeding must be mailed, by certified and ordinary first class mail, to "each owner and any other person whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed . . . whose name and address are reasonably ascertainable from the public record, including the records in the offices of the surrogate of the county" (RPTL 1125[1][a]; see RPTL 1125[1][b][i]). Moreover, where an owner of real property moves and does not give a new address to the collector of real property taxes, "due process requires taxing authorities to take reasonable steps to track down the missing taxpayer before seizing and selling his or her property" (Mac Naughton v Warren County, 20 NY3d 252, 255; see Jones v Flowers, 547 US 220; Kennedy v Mossafa, 100 NY2d 1). These are requirements of service imposed in the modern era to address concerns of due process. These are not matters which go to the jurisdiction of the court to entertain the action on its merits. As the Restatement (Second) of Conflict [*10]of Laws explains: "Sometimes the purpose of an action is not to impose a personal liability or obligation upon anyone but to affect the interests of all persons in a thing. If so, the state may render through its courts a valid judgment where it has jurisdiction over the thing even though it may not have personal jurisdiction over the persons whose interests are affected. In such a case the state is said to have jurisdiction in rem and the proceeding is said to be a proceeding in rem. One example is a judgment rendered by a court of admiralty affecting the interests of all persons in a vessel which is subject to the jurisdiction of the state. Another example is a statutory proceeding brought to register title to certain land and which is designed to affect the interests of all persons in the land. A third example is a statutory proceeding for the forfeiture to the government and the extinguishment of the interests of all persons in a thing used in violation of the revenue or other laws" (Restatement [Second] of Conflict of Laws, Introductory Note).
Because a proceeding to foreclose a tax lien is against the property, it was long perceived that service upon the property (as by a posting of notice) was sufficient "notice to all those who have any interest in the thing, and is reasonable because it is necessary, and because it is the part of common prudence for all those who have any interest in it, to guard that interest by persons who are in a situation to protect it" (The Mary, 13 US 126, 144 [Marshall, Ch. J.]). Unlike cases in which a personal judgment is sought where service of process is necessary to acquire jurisdiction, in rem jurisdiction depends, not on service, but on the presence of the property in the state (see Tyler v Judges of Ct of Registration, 175 Mass 71, 77, 55 NE 812). While it has always been agreed that notice need be given to persons having an interest in the property, it was long thought that notice of the time and place of the court hearing through either a posting at the property or by publication was sufficient in tax foreclosure proceedings. The theory was that the form of notice used should not impede the efficient collection of taxes and, further, because property owners are aware that they are subject to annual taxation, they should be assumed to have knowledge that the government will proceed against their property according to the prescribed statutory method should they become delinquent in the payment of taxes (see Note, Requirements of Notice in In Rem Proceedings, 70 Harv L Rev 1257, 1266-1267 [1957]). States were permitted to indulge in the presumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against the property take nothing away, or that the owner has left a caretaker under a duty to alert the owner that the property is in jeopardy (see Mullane v Central Hanover Bank & Trust Co., 339 US 306, 316).
In Mullane, the United States Supreme Court ruled that notice by publication was constitutionally inadequate as to persons with interests in the property whose identities and addresses are known. Critically, though, for the purposes of this case, the Court also ruled that due process did not require personal notice to those whose interests are unknown and whose location is unknown, even if such persons could be located through the exercise of due diligence: "This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights. Those beneficiaries represented by appellant whose interests or whereabouts could not with due diligence be ascertained come clearly within this category. As to them the statutory notice is sufficient. However great the odds that publication will never reach the eyes of such unknown parties, it is not in the typical case much more likely to fail than any of the choices open to legislators endeavoring to prescribe the best notice practicable. Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee. Whatever searches might be required in another situation under ordinary standards of diligence, in view of the character of the proceedings and the nature of the interests here involved we think them unnecessary. We recognize the practical difficulties and costs that would be attendant on frequent investigations into the status of great numbers of beneficiaries, many of whose interests in the common fund are so remote as to be ephemeral; and we have no doubt that such impracticable and extended searches are not required in the name of due process. The expense of keeping informed from day to day of substitutions among even current income beneficiaries and presumptive [*11]remaindermen, to say nothing of the far greater number of contingent beneficiaries, would impose a severe burden on the plan, and would likely dissipate its advantages. These are practical matters in which we should be reluctant to disturb the judgment of the state authorities" (id. at 317-318 [citations omitted]).
These important constitutional principles focus on the notice to be given to parties who may have an interest in the action. These principles have nothing to do with the jurisdiction of the court to hear the case, which is derived from the location of the real property in the state (see Restatement [Second] of Conflict of Laws § 59). Nor do these principles have anything to do with the concept of personal jurisdiction, as the court's authority over property in the state is the basis for the court's jurisdiction; the court may proceed, if notice is given to interested persons, even though no personal jurisdiction over them is obtained. The concept of due process precludes the state from exercising its jurisdiction to affect interests in property unless a reasonable method is employed to give notice to persons whose interest in the property may be affected and unless those persons are given a reasonable opportunity to be heard (see Restatement [Second] of Conflict of Laws § 57).
Mullane was applied to a tax lien foreclose case in Covey v Town of Somers (351 US 141), where notice was given to an incompetent taxpayer by mail, by posting a notice at the post office, and by publication in two local newspapers (see id. at 144). The United States Supreme Court held that the Town failed to provide due process where the taxpayer was known by the Town officials to be without mental capacity to handle her own affairs and known to be unable to understand the meaning of any notices served upon her (see id. at 146-147).
More recently, in Jones v Flowers (547 US 220), the United States Supreme Court held that while due process does not require that a property owner receive actual notice before the government can take his property, and notice is constitutionally sufficient when it is reasonably calculated to reach its intended recipient when sent, due process requires that the government do more when it becomes aware that its attempt at notice has gone awry (see id. at 226-234 ). In Jones, the Court held that notice of an impending tax sale of a residence was constitutionally inadequate where the notice, sent by certified mail, was returned by the post office "unclaimed" (id. at 224 [internal quotation marks omitted]). The Court stated that there were several reasonable steps the State of Arkansas could have taken after it learned that its notice went unclaimed: it could have resent the letter by regular mail (in this way, an occupant of the property could open it without needing to sign for it); it could have posted the notice at the property; or it could have addressed the envelope containing the notice to any occupant of the property (see id. at 234-238).
There is nothing in any of these cases that even remotely suggests that the taxing authority is required to undertake an investigation to ascertain the whereabouts of missing taxpayers or to identify and locate the relatives of deceased or absent taxpayers, such as by conducting an Internet search or searching the public records of all of the counties or other places where an absent, missing, or deceased taxpayer may have lived (see id. at 235-236; Mac Naughton v Warren County, 20 NY3d at 258; Kennedy v Mossafa, 100 NY2d at 10). To the contrary, where the true owner of the property is not apparent from the public record, a tax lien foreclosure sale is not rendered invalid by virtue of the fact that the true owner was never given personal notice of the proceeding, or named as a respondent therein (see Congregation Yetev Lev D'Satmar v County of Sullivan, 59 NY2d 418, 421, 425-427 [holding that the Appellate Division erroneously concluded that a tax lien foreclosure proceeding was defective by virtue of the fact that the County failed to give personal notice of the tax sale to the plaintiff, whom the Appellate Division found to have acquired ownership of the property at issue by adverse possession]; Matter of City of Hudson, 114 AD3d 1106, 1107 [holding that although a deed conveying the property at issue from a religious corporation to Godfrey Forbes was invalid pursuant to Religious Corporations Law § 12, a subsequent deed resulting from a tax lien foreclosure proceeding was not invalid on the ground that the religious corporation, the actual owner of the property, was not given personal notice of the tax lien foreclosure proceeding]; Maple Tree Homes, Inc. v County of Sullivan, 17 AD3d 965, 965-967 [holding that the County was not required to give notice of a tax lien foreclosure proceeding to the true owner of property that had been purportedly conveyed by a deed which ultimately proved to have been fraudulently executed]).
As observed previously, Real Property Tax Law § 1125 provides that personal notice of the commencement of a tax lien foreclosure proceeding must be mailed, by certified and ordinary first class mail, to "each owner and any other person whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed . . . whose name and address are reasonably ascertainable from the public record, including the records in the offices of the surrogate of the county" (RPTL 1125[1][a]; see RPTL 1125[1][b][i]). There is no assertion that this statute offends the constitution. Nevertheless, my colleagues in the majority are insisting, without any positive authority, that the enforcing taxing jurisdiction must undertake an investigation and, apparently, commence a separate proceeding to secure the appointment of an estate representative. Ironically, the majority posits that this is not a case "where the record owner no longer lives at the address on file" (majority op at 8), suggesting that if the owner had moved perhaps they would find jurisdiction to be present. But, in this case, the owners most certainly can be said to have moved, albeit in a more permanent sense than that phrase would usually connote.
Here, there is no assertion that the taxing authority knew, or even that it should have known, that the property owners were deceased at the time the proceeding was brought. Notice was given by both certified and regular mail directed to the address in the Town's records. When the certified mailing was returned due to the forwarding time having expired, rather than doing nothing (as is what happened in Jones), the County promptly resent the papers, by certified and regular mail, to the new address that was set forth on the returned certified mailing. The regular mail was not returned, and the certified mailing was signed for. The County also posted notice on the front door of the premises. These measures amply meet the constitutional requirement of reasonableness.
The answer purportedly filed by an attorney on behalf of Goldman, the niece of the deceased taxpayers, was a nullity because Goldman lacked standing to represent their interests. That said, the answer did provide the County with notice that the taxpayers were deceased, that they were survived by a niece, and that the niece was in the process of commencing a proceeding for the administration of their estates. The County then acted reasonably by serving a copy of its motion for a judgment of foreclosure upon the attorney who had appeared for the niece. It would be reasonable for the County to rely on the representation that the niece was taking charge of the estate matters and wholly unreasonable to expect, or require, the County to initiate an estate proceeding where a relative said she was going to do so.
The Supreme Court, and my colleagues in the majority, require the County, in order to enforce its right to collect the unpaid taxes from the property, to seek the appointment of an administrator for the estates of the Dixons. In my view, it would be unduly burdensome to require taxing authorities, upon becoming aware that the property owner of record is deceased, to commence a proceeding in the Surrogate's Court for the appointment of an administrator pursuant to SCPA 1002 (see Rimelon DC, LLC v Estate of Robinson, 2010 WL 4626050, 2010 DC Super LEXIS 4, *26-30), particularly where the decedents' relative represented that she intended to do so.
SCPA 1002 provides that a person interested in the estate of an intestate, a public administrator, the chief fiscal officer of the county, or a person interested in an action brought in which the intestate would be a proper party may present a petition to the Surrogate's Court for a decree granting letters of administration to him or herself or to another person upon the estate of the intestate. Here, if the County's chief fiscal officer were to be appointed the administrator of the Dixons' estate, that appears to impose a fiduciary duty upon her in favor of the estate beneficiaries that would be in conflict with her interest in enforcing the tax lien on behalf of the County.
In Matter of Zaharia (243 AD2d 926), the decedent died owning approximately 80 parcels of real property located within Sullivan County, all of which became tax delinquent during his lifetime or within the years since he died (see id. at 926). Due to the renunciation of the executor named in the decedent's will and the failure of any interested party to file a petition for appointment as fiduciary, the Surrogate's Court appointed Daniel L. Briggs, the Treasurer and chief fiscal officer of Sullivan County, as public administrator of the decedent's estate (see id.). Briggs, in turn, moved to be relieved of his appointment based upon an alleged conflict of interest existing by virtue of his status as County Treasurer (see id.). The Appellate Division, Third Department, held that it was [*12]appropriate for the Surrogate's Court to deny Briggs's motion to be relieved in view of the fact that the court, mindful of the outstanding tax liabilities attached to the parcels comprising the estate, imposed a prohibition on the sale, foreclosure, or encumbrance of such property as a condition of its order of appointment (see id. at 927). If the chief fiscal officer of the County here were to similarly be precluded from foreclosing on the tax lien by virtue of her appointment as the administrator of the Dixons' estates, it would be highly prejudicial to the County. In short, the County's commencement of an estate proceeding could result in the imposition of a stay on its ability to prosecute its foreclosure proceeding, which would defeat the very object for which the County would have filed the estate proceeding. Moreover, implicit in the imposition in Zaharia of a prohibition against the sale, foreclosure, or encumbrance of the tax-deficient properties at issue is the recognition that, absent such a prohibition, the County was free to prosecute its lien enforcement procedures, something that the Supreme Court and the majority hold is not permissible.
Further, even putting aside the issue of conflict of interest, the County's chief fiscal officer, if appointed estate administrator, would be obligated to undertake a considerable number of difficult and time-consuming tasks, including, but not limited to: searching for and marshaling assets; identifying, validating, and paying claims; identifying and authenticating the identity of relatives who have a beneficial interest in the estate; and preparing accountings and other court filings.
I submit that if heirs of a deceased property owner wish to contest a tax lien foreclosure, it is incumbent upon them to either commence a proceeding in the Surrogate's Court for the appointment of a personal representative, or to file a declaration of interest pursuant to Real Property Tax Law § 1126, which would entitle them to copies of all notices required in tax lien foreclosure proceedings. Here, despite receiving notice of the foreclosure proceeding and asserting in her answer that she intended to commence a proceeding for the appointment of an administrator for the estates of the Dixons, Goldman, the decedents' niece, failed to do so, and did not submit any opposition to the County's motion for summary judgment on the petition and to strike her answer. Thus, despite due mailing of the papers to the address for the owners on the public record, the due mailing of the papers to the address given by the niece, and despite due posting of notice at the subject property itself, no one came forward to claim an interest in this property. The County's methods of service were reasonable; there is no requirement that the court obtain subject matter jurisdiction over any heirs.
Even assuming that Goldman's answer was viable in spite of the fact that it was purportedly interposed on behalf of the deceased record owners of the property, for the foregoing reasons, the County demonstrated that the only defense asserted in the answer was without merit. Since the County otherwise established its entitlement to summary judgment, and since no opposition to the motion was filed, the Supreme Court should have granted it.
Accordingly, I respectfully dissent and vote to reverse the order appealed from.
ENTER:
Aprilanne Agostino
Clerk of the Court